**F I L E D**
United States Court of Appeals
Tenth Circuit

APR 22 1997

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

CHEMICAL WEAPONS WORKING
GROUP, INC. (CWWG); SIERRA
CLUB; and VIETNAM VETERANS OF
AMERICA FOUNDATION,

      Plaintiffs - Appellants,

v.

UNITED STATES DEPARTMENT OF
THE ARMY; UNITED STATES
DEPARTMENT OF DEFENSE; and
EG&G DEFENSE MATERIAL, INC.,

      Defendants - Appellees.

No. 96-4166

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 96-CV-425)

Richard E. Condit (Mick G. Harrison, GreenLaw, Berea, Kentucky; Randall M. Weiner, Ecological Consultants for the Public Interest, Boulder, Colorado; Robert Ukeiley; R. Paul Van Dam, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, with him on the briefs), GreenLaw, Berea, Kentucky, for Plaintiffs-Appellants.

Craig D. Galli (David W. Tundermann with him on the brief), Parsons Behle & Latimer, Salt Lake City, Utah, for the Defendant-Appellee EG&G Defense Material, Inc.

Peter A. Appel (Edward J. Shawaker, Alan D. Greenberg, Robert H. Foster, Charles W. Findlay, Lisa Ann Holden, and Robert L. Klarquist, Department of Justice, Scott M. Matheson, Jr., United States Attorney; Stephen Roth, Assistant United States Attorney; Lois J. Schiffer, Assistant Attorney General, with him on the brief), Department of

Justice, Washington, D.C., for Defendants-Appellees United States Department of the Army and United States Department of Defense.

---

Before **PORFILIO**, **EBEL** and **HENRY**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

In this appeal, Appellants Chemical Weapons Working Group, Inc*.,* Sierra Club, and Vietnam Veterans of America Foundation (Plaintiffs) argue that the district court erred in denying their request for a preliminary injunction and in dismissing their claims under the Clean Water Act, Resource Conservation and Recovery Act, 1986 Department of Defense Authorization Act, and Administrative Procedures Act. Finding none of their arguments persuasive, we affirm.

## I.

In 1985, Congress directed the Department of Defense to destroy the nation's stockpile of lethal chemical weapons, which is currently located at Johnston Island in the Pacific Ocean and at eight different sites in the continental United States. One of these sites, Tooele Chemical Agent Disposal Facility near Tooele, Utah, stores just over 40% of the nation's 30,000 tons of chemical warfare agent. Tooele's stockpile consists of both nerve and blister agents contained in a variety of bulk containers and munitions, some of which contain "energetics" (explosives and propellants) that also require disposal. This appeal results from a dispute over how to best implement the 1985 mandate: by

incinerating the chemical weapons immediately or by storing them pending the development of feasible incineration alternatives.

In 1986, the Army completed and circulated a Draft Environmental Impact Statement, which considered the environmental consequences of continued storage of the nation's chemical weapons stockpile compared to different logistical arrangements for its immediate disposal. The following year, the Army completed a quantitative risk assessment, concluding that the accident risk associated with continued stockpile storage significantly outweighed that associated with disposal operations. The Army used this assessment to support its 1988 Final Programmatic Environmental Impact Statement and Record of Decision, which selected on-site incineration as the means by which chemical weapons would be destroyed nationwide. At that time, the Army rejected alternatives to incineration as either unreasonable or premature. In 1989, the Army issued a site-specific Final Environmental Impact Statement and Record of Decision for Tooele, adopting the 1988 Final Programmatic Environmental Impact Statement conclusions and choosing on-site incineration as the method of destroying the chemical weapons stored there.

Before allowing the Army to proceed with its incineration plan, Congress required it to conduct Operational Verification Testing of the Johnston Atoll Chemical Agent Disposal System, a full-scale, operational chemical weapons incineration plant on Johnston Island that was designed to serve as the prototype for incinerators at other stockpile sites such as Tooele. In 1993, the Secretary of Defense certified to Congress

that testing at Johnston Atoll was complete, verifying that the operation there had been a success. The MITRE Corporation, a private contractor, was engaged by the Army to monitor, evaluate and report its operational testing results.  The National Research Council's Committee on Review and Evaluation of the Army Chemical Stockpile Disposal Program (Stockpile Committee) was also chartered to monitor the Army's testing at Johnston Atoll and to review the test results reported by the MITRE Corporation.  In its 1993 report, the MITRE Corporation concluded that although improvements could be made in the incineration technology used, Johnston Atoll had "no apparent fundamental safety, environmental, or process-related problems."  Similarly, the Stockpile Committee concluded in 1994 that although Johnston Atoll had some operational problems, none were "show stoppers" for other chemical incineration plants.

In 1994, the Stockpile Committee also issued a report endorsing the Army's choice of incineration as the means by which to destroy the nation's chemical weapons stockpile. In that report, the Committee found there was no feasible alternative to incineration for the destruction of energetics, although it recommended that the Army update its 1987 quantitative risk assessment and continue to evaluate alternative technologies for sites other than Tooele.  The Stockpile Committee report also considered the chronic health risks associated with routine incineration operations, concluding that alternative technologies would affect only a fraction of the releases caused by incineration and that "any reduction in disposal risk afforded by an alternative technology will be more than

offset by the larger cumulative risk from extended storage." The Committee therefore

recommended that disposal operations proceed without delay. In response to the

Stockpile Committee's report, the Army performed a site-specific quantitative risk

assessment for Tooele in 1995, again concluding that the accident-associated risk of

continued stockpile storage significantly outweighed that of incineration operations.[1]

In May 1996, Plaintiffs brought this action, alleging violations of various

environmental protection acts. In one of those allegations, Plaintiffs claimed that the

Army violated the National Environmental Policy Act by failing to prepare a

Supplemental Environmental Impact Statement on the basis of significant new

information relevant to environmental concerns. The Army responded in part by

preparing a Record of Environmental Consideration in July 1996, which concluded that

no new, significant information had developed since its 1988 Final Programmatic

Environmental Impact Statement and 1989 site-specific Final Environmental Impact

Statement were issued that would require the preparation of a supplemental

environmental statement. Attached to the Record of Environmental Consideration was an

84-page report evaluating new information on dioxin emissions and alternative

technologies. This report also discussed the problems experienced at Johnston Atoll,

---

[1]Specifically, the 1995 assessment found that the accident risk associated with 11 days of continued stockpile storage approximated that associated with 6.2 years of incineration operations. For individuals living closest to Tooele, the fatality risk from accidents was found to be 100 times greater for continued stockpile storage versus incineration operations.

concluding that although the operation there had not been perfect, it had safely and effectively disposed of chemical agent and had not resulted in significant environmental impacts not already contemplated.

Presently, the Army has all permits necessary to operate Tooele. The Utah Department of Environmental Quality has issued both Clean Air Act and Resource Conservation and Recovery Act permits under its delegated authority from the Environmental Protection Agency. The Army has thus far conducted two trial burns at Tooele without chemical agent to determine whether the facility can destroy agent and other materials without releasing a significant amount of toxins into the environment. The Utah Department of Environmental Quality has approved the results of both tests. Presumably, the Army is now in the process of conducting trial burns with live agent, the results of which must also be approved by Utah before Tooele can become fully operational.

## II.

After extensive hearings, the district court denied Plaintiffs' request for a preliminary injunction of the Army's scheduled incineration operations at Tooele because none of the requirements for injunctive relief had been met. First, the court found Plaintiffs had failed to establish irreparable harm because the health risks associated with the Army's incineration operations were too speculative, while Plaintiffs' allegation of a National Environmental Policy Act violation was, without more, insufficient to meet the

irreparable harm requirement. Next, the court found Plaintiffs had failed to meet the balance of harms requirement for injunctive relief, relying principally on the Army's 1987 and 1995 quantitative risk assessment results. Finally, the district court held Plaintiffs were unlikely to prevail on the merits of their claim under the National Environmental Policy Act because the Army's 1996 Record of Environmental Consideration was entitled to deference and because the Army was entitled to rely on its own experts in determining whether a Supplemental Environmental Impact Statement was warranted.

We review a district court's denial of a preliminary injunction for abuse of discretion. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). "An abuse of discretion occurs only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *In re Coordinated Pretrial Proceedings in Petro. Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982). Because a preliminary injunction is an extraordinary remedy, "the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).

To obtain injunctive relief, a party must establish that: (1) it will suffer irreparable injury unless an injunction is issued; (2) its threatened injury outweighs any harm the proposed injunction may cause to the opposing party; (3) it will likely prevail on the merits of the litigation; and (4) an injunction, if issued, would not be adverse to the public interest. *Lundgrin*, 619 F.2d at 63. Because the district court's balance of harms analysis

is dispositive on this point of appeal, we consider it first.

On appeal, Plaintiffs argue that the district court's balance of harms finding is clearly erroneous because it overestimates the accident-related risk of continued storage, while underestimating the chronic health-related risks of routine incineration operations. We disagree. Although Plaintiffs' evidence on the health-related risks of short-term dioxin exposure is significant, we cannot conclude that the district court's finding on this issue is without any rational basis. To the contrary, the court's conclusion is amply supported by the results of the Army's 1987 and 1995 quantitative risk assessments as well as the Stockpile Committee's 1994 report, which specifically considered the health-related risks associated with routine incineration operations. We therefore affirm the district court's denial of Plaintiffs' request for a preliminary injunction on the basis of its balance of harms finding, obviating the need to address Plaintiffs' other arguments justifying a preliminary injunction in this instance. Because we conclude the district court properly denied injunctive relief, we also do not address Plaintiffs' claim that a remand is necessary to consider the effect a preliminary injunction would have on the public interest.[2]

## III.

---

[2] We note, however, that any duty the district court had to consider the public interest was discharged implicitly in its balance of harms analysis. *See Autoskill, Inc. v. National Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993) (district court implicitly addressed public interest requirement for injunctive relief).

Plaintiffs next argue the district court erred in holding § 301(f) of the Clean Water Act does not apply to Tooele's stack emissions, dismissing their count under that section for failure to state a claim upon which relief can be granted. Plaintiffs reason that § 301(f)'s ban on the discharge of chemical warfare agent into navigable waters must apply to Tooele's stacks because the text of that provision places no limitation on the form of chemical agent discharged or on the manner in which it enters navigable waters. Absent such limitations, Plaintiffs urge us to read § 301(f) broadly to include discharge by way of atmospheric deposition to effectuate congressional intent to keep the nation's navigable waters clean.

We review de novo a district court's dismissal of a cause of action for failure to state a claim upon which relief can be granted. *Edwards v. International Union, United Plant & Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995). As is true when we construe any statute, the plain language of the provision controls absent an irrational result. *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986). We must also construe apparently conflicting statutes harmoniously where possible. *United States v. State of Colo.*, 990 F.2d 1565, 1575 (10th Cir. 1993). Because Plaintiffs' interpretation of § 301(f) of the Clean Water Act is inconsistent with congressional intent, leads to irrational results, and creates a conflict between the Clean Water Act and Clean Air Act, we decline to construe that provision in the broad manner proposed by Plaintiffs.

Section 301(f) of the Clean Water Act provides that "it shall be unlawful to

discharge any radiological, chemical, or biological warfare agent, any high-level radioactive waste, or any medical waste into the navigable waters."  33 U.S.C. § 1311(f). Because both parties agree that § 301(f)'s ban is absolute, application of this provision to Tooele's stack emissions would effectively shut down its incineration operations indefinitely.  This result, however, is completely at odds with congressional knowledge, approval, and funding of incineration as the baseline technology for destroying chemical weapons since 1986, when the Army first submitted its disposal program to Congress. We therefore reject Plaintiffs' proposed construction of § 301(f) because it is clearly inconsistent with congressional intent to implement Tooele's incineration plan.

We also reject Plaintiffs' construction of § 301(f) of the Clean Water Act because it would lead to irrational results.  Because Clean Water Act § 301(a) regulates the discharge of any pollutant into navigable waters, *see* §§ 1311(a), 1362(12), Plaintiffs' broad construction of the phrase "discharge . . . into the navigable waters" under § 301(f) would necessarily result in regulation under § 301(a) of any air emission that might possibly result in atmospheric deposition into navigable waters.  While Plaintiffs argue that the Environmental Protection Agency could issue a nationwide permit "for sources of water pollution such as cars and chimneys" to the extent § 301(a) would apply, the very thought of regulating car emissions under the Clean *Water* Act exposes the absurdity of their position.  Tellingly, Plaintiffs also fail to cite a single instance in which stack emissions are regulated under the Clean Water Act.  We therefore conclude that under the

facts of this case, they are not. Although Plaintiffs may be correct in arguing that an object may fly through the air and still be "discharged . . . into the navigable waters" under the Clean Water Act, common sense dictates that Tooele's stack emissions constitute discharges into the air--not water--and are therefore beyond § 301(f)'s reach.[3]

Finally, we reject Plaintiffs' proposed construction of § 301(f) because in this instance, it would create a regulatory conflict between the Clean Water Act and Clean Air Act. Plaintiffs do not deny that under delegated authority by the Environmental Protection Agency, Utah has issued the Army a Clean Air Act permit for Tooele to discharge limited amounts of chemical warfare agent particles into the atmosphere. Because Tooele's Clean Air Act permit specifically allows the discharges that Plaintiffs claim are barred under Clean Water Act § 301(f), applying that provision to Tooele's stack emissions would create an irreconcilable conflict between the two regulatory regimes.[4] We decline Plaintiffs' invitation to create such a conflict, especially since the

---

[3]Likewise, we reject Plaintiffs' claim that Tooele's stack emissions constitute discharge into navigable waters because in other instances, this court has recognized jurisdiction under the Clean Water Act where pollutants were discharged into ground or surface water that in turn flowed into navigable water. *See, e.g., **Quivira Mining Co. v. United States Envtl. Prot. Agency***, 765 F.2d 126 (10th Cir. 1985). Without determining the precise jurisdictional limits of the Clean Water Act, we hold only that Tooele's stack emissions, unlike other indirect discharges, lack the requisite nexus to navigable waters to render them subject to regulation under that statute.

[4]We defenestrate plaintiffs' suggestion that the Army's Clean Air Act permit is somehow inferior to the result required under the Clean Water Act because it was issued by the Utah Department of Environmental Quality, rather than the Environmental

(continued...)

pollution effects of atmospheric deposition are expressly considered and regulated under the Clean Air Act. *See, e.g.,* 42 U.S.C. § 7403(e)(4) (requiring Environmental Protection Agency to evaluate "the effects of air pollution on water quality"); §§ 7651(a)-(o) (regulating pollution sources of acid rain). We therefore hold that § 301(f) of the Clean Water Act does not apply to Tooele's stack emissions because they do not constitute discharge into navigable waters, despite the broad language and policy goals of that provision. *See also Train v. Colorado Pub. Interest Research Group, Inc.,* 426 U.S. 1 (1976) (radioactive materials regulated under Federal Water Pollution Control Act do not include substances already subject to regulation under the Atomic Energy Act, despite the absence of limiting language in statute). As a result, we do not address the Army's alternative arguments that § 301(f) is inapplicable because Tooele does not discharge chemical warfare agent and because any discharge into navigable waters does not come from a discernable point source.

## IV.

Plaintiffs next argue the district court erred in dismissing their imminent hazard claim under the Resource Conservation and Recovery Act for lack of subject matter jurisdiction. The district court reasoned that Plaintiffs' claim was essentially a collateral attack on the Army's permit under the Act because it challenged Utah's finding in issuing

---

[4](...continued)
Protection Agency. Under the Clean Air Act, this distinction is without a difference because Utah had federally-delegated authority and employed permit standards no less stringent than those promulgated by the Environmental Protection Agency. § 7412(l)(1).

the permit that Tooele's incineration operations would not constitute an imminent hazard to human health or the environment. As a result, the court held that Plaintiffs' claim was barred under 42 U.S.C. § 6972(b)(2)(D), which expressly forbids citizen suits to restrain or enjoin the issuance of Resource Conservation and Recovery Act permits.

Plaintiffs argue the district court's ruling should be reversed because they are attempting to enjoin permitted activities that create an imminent hazard, not the issuance of a Resource Conservation and Recovery Act permit. According to Plaintiffs, that Act's citizen suit provision for imminent hazards must allow claims against permitted activity because another citizen suit provision already allows for claims against facilities operating in violation of permit conditions or without any permit at all. Plaintiffs additionally maintain that Tooele's permit specifically states that compliance with permit conditions does not constitute a defense to an imminent hazard claim under the citizen suit provision. Finally, Plaintiffs argue that reversing the district court in this instance would vindicate the dual-purpose of the imminent hazard citizen suit provision: to grant citizens enforcement powers equal to those enjoyed by the Environmental Protection Agency and to prevent all imminent hazards to human health and the environment.

We review a district court's dismissal of a claim for lack of subject matter jurisdiction de novo. *Olguin v. Lucero*, 87 F.3d 401, 403 (10th Cir. 1996). Where a statute is susceptible to two meanings, we will choose the one that gives full effect to all of its provisions. *Negonsott v. Samuels*, 933 F.2d 818, 819 (10th Cir. 1991), *aff'd* 507

- 13 -

U.S. 99 (1993). Because allowing Plaintiffs' imminent hazard claim to proceed in this instance would ignore the Resource Conservation and Recovery Act's ban on suits to enjoin the issuance of permits while undermining its limited provisions for judicial review of permit decisions, we affirm.

Under § 6972(a)(1)(B) of the Resource Conservation and Recovery Act, any person may bring an action against anyone else "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). This provision is limited only by § 6972(b)'s bar on suits "to restrain or enjoin the issuance of a permit." § 6972(b)(2)(D). For individuals desiring to judicially challenge the issuance of a Resource Conservation and Recovery Act permit, § 6976(b) provides for direct appeal of Environmental Protection Agency permit decisions to the circuit court of appeals in which the individual resides within 90 days of the permit decision at issue, unless the application for review is based on information that arose after the 90-day period has expired. § 6976(b). All challenged permit decisions are considered under the "arbitrary and capricious" standard of review. *See id.*; 5 U.S.C. § 706. Thus, by its own terms, the Resource Conservation and Recovery Act does not allow collateral attacks on Environmental Protection Agency permit decisions or those of state agencies with federally-delegated authority. *See* § 6976(b) (state-issued permits under the Resource

Conservation and Recovery Act have same force and effect as those issued by Environmental Protection Agency).

Because Plaintiffs' imminent hazard claim essentially attacks Utah's decision to issue the Army a Resource Conservation and Recovery Act permit, we conclude that the district court properly refused to recognize jurisdiction under § 6972(b). The Resource Conservation and Recovery Act's implementing regulations provide that the Environmental Protection Agency may not issue a permit for trial burns without first having determined that they "will not present an imminent hazard to human health or the environment." 40 C.F.R. § 270.62(b)(5)(ii). Under Utah's parallel regulatory provisions, the Executive Secretary of the Utah Solid and Hazardous Waste Control Board, a division of the Utah Department of Environmental Quality, was required to make the exact same finding before issuing Tooele's Resource Conservation and Recovery Act permit under its federally-delegated authority. Because Plaintiffs' imminent hazard claim directly challenges this finding, we are unable to construe it as anything other than a collateral attack on the Executive Secretary's permit decision itself. Indeed, recognizing jurisdiction in this case would severely undermine the limited judicial review of agency permit decisions provided under the Resource Conservation and Recovery Act, allowing disgruntled individuals to circumvent the Act's 90-day window for directly challenging such decisions and deferential standard of review. *See also Greenpeace, Inc. v. Waste Tech. Indus.*, 9 F.3d 1174 (6th Cir. 1993) (imminent hazard citizen suit against facility

operating within confines of Resource Conservation and Recovery Act permit constitutes impermissible collateral attack on Environmental Protection Agency permit decision); **Palumbo v. Waste Tech. Indus.**, 989 F.2d 156 (4th Cir. 1993) (same).

Plaintiffs' arguments to the contrary are unpersuasive. While insisting that the focus of their imminent hazard claim is not on the permit process itself, Plaintiffs concede that in this instance, the only consequence of their suit would be to enjoin the Army's operations at Tooele entirely. That being the case, Plaintiffs' claim is indistinguishable from other attempts to enjoin the issuance of the Army's Resource Conservation and Recovery Act permit, although in this case the attempt is made retroactively. Plaintiffs' statutory construction argument based on the text of the Resource Conservation and Recovery Act and Tooele's permit under that Act is equally unpersuasive. Because the Army agrees that an imminent hazard citizen suit may be brought for permitted activity so long as it is based on information not already considered in the permit process Plaintiffs' claim that they must be able to sue for permitted activity is, without more, inapposite.[5] While we agree with Plaintiffs that any limitation on the citizen suit provision creates a disparity between the enforcement powers enjoyed by the Environmental Protection

---

[5]The Army's position on this issue is consistent with that espoused by the Environmental Protection Agency in **Shell Oil Company v. Environmental Protection Agency**, 950 F.2d 741 (D.C. Cir. 1991). In **Shell Oil**, the Agency represented to the D.C. Circuit that a Resource Conservation and Recovery Act permit would "narrow the opportunities" for citizen suits, though it would not preclude them entirely. *Id.* at 763. As a result, Plaintiffs' reliance on this decision is misplaced.

Agency and concerned individuals, we conclude that this disparity was created by Congress because only the citizen suit provision is limited by § 6972(b). The Environmental Protection Agency, by contrast, may sue for imminent hazard at any time. *See* § 6973(a).

We therefore conclude Plaintiffs' imminent hazard claim constitutes an impermissible collateral attack on Utah's decision to issue the Army a Resource Conservation and Recovery Act permit under its federally-delegated authority. Because we hold that the district court properly refused to recognize jurisdiction over this claim under § 6972(b), we do not address the Army's alternative argument that jurisdiction was properly declined on abstention grounds.

Finally, Plaintiffs argue that the district court erred in dismissing their maximum protection and Operational Verification Testing counts for failure to state a claim upon which relief could be granted. Plaintiffs first contend that the 1986 Department of Defense Authorization Act provides an implied private right of action for their maximum protection claim because it is mandatory in tone and was especially created to benefit the general public, a class to which they belong. Plaintiffs further argue that absent an implied private right of action under the 1986 Act, Congress' maximum protection mandate will have no enforcement mechanism at all. Next, Plaintiffs contend that their maximum protection and Operational Verification Testing counts state a claim under the Administrative Procedures Act because they challenge reviewable agency actions: the Army's decision to commence trial burns at Tooele and its completion and certification of operational testing at Johnston Atoll. According to Plaintiffs, the Army's decision to commence trial burns is reviewable under the Administrative Procedures Act as either an agency order or informal agency action.

We review the district court's dismissal of Plaintiffs' maximum protection and Operational Verification Testing claims de novo. *Edwards*, 46 F.3d at 1050. In this instance, both claims arise out of language found in the 1986 Department of Defense Authorization Act, codified at 50 U.S.C. § 1521. Section 1521(c) of the 1986 Act requires the Army to provide "maximum protection for the environment [and] the general

public" in destroying the nation's chemical warfare agent stockpile.  50 U.S.C.

§ 1521(c)(1)(A).  Section 1521(k), which was added in 1989, requires the Army to

complete operational testing at Johnston Atoll before destroying chemical weapons

elsewhere and to certify to Congress through the Secretary of Defense that such testing

has been successfully completed.[6]  §§ 1521(k)(1), (2).  Because Plaintiffs fail to convince

us that either of their claims present a cause of action under the 1986 Authorization Act

or Administrative Procedures Act, we affirm.

We first consider Plaintiffs' contention that the 1986 Defense Authorization Act

provides an implied private right of action for their maximum protection claim because,

as discussed later, review under the Administrative Procedures Act is available only if

there exists no other remedy in court.  *See* 5 U.S.C. § 704.  In determining whether an

implied private right of action exists under a particular statute, the focus is solely on

congressional intent.  ***Sonnenfeld v. City and County of Denver***, 100 F.3d 744, 747 (10th

Cir. 1996).  Given the indications of congressional intent relied on by Plaintiffs to assert

an implied private right of action under the 1986 Authorization Act, we conclude that the

Supreme Court's decision in ***California v. Sierra Club***, 451 U.S. 287 (1981), is

sufficiently analogous to control on this point of appeal.

---

[6]Plaintiffs' maximum protection claim alleges that the Army's incineration operations do not afford maximum protection to the environment and general public, while their Operational Verification Testing claim alleges that the Army's testing at Johnston Atoll is both inaccurate and incomplete.

In *Sierra Club*, the Court held the 1899 Rivers and Harbors Appropriation Act did not imply a private right of action, despite the fact that the plaintiffs in that action were members of the class for whom the statute was passed: the general public. *Id.* at 294-95. Commenting on its earlier decision in *Cort v. Ash*, 422 U.S. 66 (1975), the Court explained, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club*, 451 U.S. at 294. The Court then concluded the general proscription stated in the 1899 Act was intended to be enforced through "a general regulatory scheme" administered under the then Secretary of War, not through the vindication of private rights. *Id.* at 298.

Given the decision in *Sierra Club*, Plaintiffs have not persuaded us the 1986 Defense Authorization Act provides an implied private right of action just because it is mandatory in tone and was passed to benefit the general public. Because Plaintiffs provide no indication that Congress intended to confer federal rights upon the beneficiaries it identified in the 1986 Act, we cannot conclude it intended for the Army's mandate to be privately enforceable.

Similarly, Plaintiffs are incorrect that absent an implied private right of action, Congress' 1986 maximum protection mandate would be completely unenforceable. Like the 1899 Act considered in *Sierra Club*, Congress' 1986 maximum protection mandate is fully enforceable through a general regulatory scheme, comprised in this instance by the myriad of environmental statutes that regulate the Army's incineration operations at

Tooele. Recognizing that the Court has been "especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large," *Cannon v. University of Chicago*, 441 U.S. 677, 693 n.13 (1979), we affirm the district court's determination that the 1986 Defense Authorization Act does not imply a private right of action for Plaintiffs' maximum protection claim.

We also affirm the district court's determination that it lacked jurisdiction to consider Plaintiffs' maximum protection and Operational Verification Testing claims under the Administrative Procedures Act. Judicial review under the Administrative Procedures Act is available only for "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "Agency action" under the Act is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." § 551(13). The term "order" is defined as "the whole or part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." § 551(6). Because Plaintiffs' maximum protection and testing claims are not reviewable by statute, they must challenge "final agency action" to confer upon the district court jurisdiction under the Administrative Procedures Act.

Given the Administrative Procedures Act's definition of the terms "agency action" and "order," we conclude Plaintiffs' maximum protection claim is not reviewable under

that statute. Assuming Plaintiffs sufficiently apprised the district court of the particular agency action they challenge, we nevertheless fail to see how the Army's decision to commence trial burns at Tooele qualifies as final agency action. Plaintiffs provide no indication that the Army has ever revisited the question of how precisely it planned to destroy the chemical weapons at Tooele since its 1989 Final Environmental Impact Statement. That being the case, we have no basis upon which to conclude the Army's actions at Tooele after 1989 constitute a "final disposition . . . in a matter," rather than the implementation of a "final disposition" already made. *See* § 551(6). Because Plaintiffs do not deny 28 U.S.C. § 2401's six-year statute of limitations applies to suits under the Administrative Procedures Act, they are also unable to challenge the Army's 1989 Final Environmental Impact Statement conclusions. *See also Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988) (six-year general statute of limitations applies to actions under the Administrative Procedures Act). We therefore hold that the district court's dismissal of Plaintiffs' maximum protection claim under the Administrative Procedures Act was proper because it failed to challenge a reviewable agency order.

Plaintiffs' reliance on *Anderson v. U.S. Department of Housing and Urban Development*, 701 F.2d 112 (10th Cir. 1983), to argue in the alternative that the Army's incineration operations constitute "informal agency action" reviewable under the Administrative Procedures Act is misplaced. Although the court in *Anderson* characterized a decision by the Department of Housing and Urban Development as

"informal agency action," *id.* at 113, it did not hold that the Department's decision was therefore something other than "agency action" as defined by the Administrative Procedures Act. To the contrary, the decision not to accept a mortgage assignment could easily be construed as a "final disposition . . . in a matter," thereby qualifying as an agency order under the Administrative Procedures Act.

Plaintiffs' Operational Verification Testing claim under the Administrative Procedures Act is equally without merit because they fail to explain how the Army's operational testing at Johnston Atoll constitutes a "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *See* 5 U.S.C. § 551(13). We also fail to comprehend how the Army's completion of operational testing can qualify as final agency action under the Administrative Procedures Act. Construing the agency action challenged as the Secretary of Defense's certification to Congress that testing was complete is similarly unhelpful. *See America Trucking Assoc. v. United States*, 755 F.2d 1292, 1297 (7th Cir. 1985) (agency reports do not constitute "agency action" under Administrative Procedures Act because they do not change law or policy); *Industrial Safety Equip. Ass'n, Inc. v. Environmental Protection Agency*, 837 F.2d 1115, 1120 (D.C. Cir. 1988) (same). We therefore affirm the district court's dismissal of both claims asserted under the Administrative Procedures Act, along with its rulings on Plaintiffs' first three points of appeal.

**AFFIRMED**.

- 23 -