Jerry L. EDWARDS, Plaintiff–Appellant,

v.

INTERNATIONAL UNION, UNITED PLANT GUARD WORKERS OF AMERICA (UPGWA) and its Affiliated Local 796, Defendants–Appellees.

No. 94–7035.

United States Court of Appeals, Tenth Circuit.

Jan. 31, 1995.

Jack Marwood Short, Tulsa, OK (R. Forney Sandlin, Muskogee, OK, with him on the brief), for Plaintiff–Appellant.

Scott A. Brooks of Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, P.C., Detroit, MI (Lisa S. Lane with him on the brief), for Defendants–Appellees.

BALDOCK and BRORBY, Circuit Judges, and KANE *, Senior District Judge.

KANE, Senior District Judge.

Jerry L. Edwards brought this action against his collective bargaining agent, United Plant Guard Workers of America and its affiliated Local 796 (collectively, the "Union"), alleging the Union breached its duty of fair representation by mishandling his wrongful discharge grievance against his former employer, Trover Security Svc. ("Trover"). The district court dismissed the ac-

---

* Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

tion as barred by the six-month statute of limitations applicable to "hybrid" breach of collective-bargaining agreement/unfair representation claims under the rationale set forth in *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and this appeal ensued.

Edwards asserts the district court erred in characterizing his suit as a "hybrid" action and contends it more closely resembles one for legal malpractice to which Oklahoma's two-year statute of limitations should apply. Alternatively, Edwards argues the Union's dilatory conduct in processing his grievance and responding to demand letters he sent after all grievance procedures were exhausted tolled the running of his unfair representation claim. For the reasons set forth below, we affirm.

## I. *Background*

Jerry L. Edwards was an employee of Trover and a member of the Union until his discharge on June 28, 1991. The Union and Trover are parties to a collective bargaining agreement covering the terms and conditions of employment of all employees in the bargaining unit. The agreement incorporates Article VI, § 14 of the Constitution and By-Laws of UPGWA which describes and governs the grievance process and "irrevocably" designates the Union "to appear exclusively and act as [each member's] agent to represent and bind him in the presentation, prosecution, adjustment and settlement of all grievances, complaints or disputes of any kind or character arising out of the employer-employee relationship."

On July 1, 1991, the Union timely filed a grievance on behalf of Edwards protesting his discharge. On July 23, 1991, the Union notified Trover of its intent to arbitrate but did not select an arbitrator until December 23, 1991. The Union justified the five month delay as having been "due to the grievance being reviewed by the regional and national union office ... [and] then sent for review by counsel." (Aplt.'s App. at 14.) Trover agreed to the selection, but reserved an objection as to its timeliness.

On March 26, 1992 the arbitrator dismissed Edwards' grievance as untimely in light of the delay between the time the Union notified Trover of its intent to arbitrate and the time the arbitrator was actually selected. On June 22, 1992, still acting exclusively on behalf of Edwards, the Union filed suit against Trover in the district court (Case No. 92–378–S) seeking an order vacating the arbitration award and requiring the arbitrator to consider Edwards' grievance on the merits. Trover moved for summary judgment and on October 28, 1992, the district court upheld the arbitrator's decision and dismissed the Union's suit.

Edwards was notified of the district court's decision in early November, 1992 and retained legal counsel. On November 28, 1992, counsel mailed the first of four letters to the Union, claiming money damages for Edwards' losses caused by the Union's mishandling of the arbitration process. (Aplt.'s App. at 48–49). The letter requested payment of a sum certain by December 21, 1992. *Id.* After receiving no response by the requested date, counsel mailed follow-up letters on December 23, 1992, March 29, 1993, and May 7, 1993. Edwards assumed the delay, like the delay in selecting the arbitrator, was the result of the intra-union review process. (Aplt.'s Br. at 6.)

Eight months after being notified of the district court's order denying the Union's motion to vacate the award, and still having received no response from the Union to his demand letters, Edwards filed suit against the Union for breach of its duty of fair representation. *See* Complaint, No. 93–455–NJ (filed July 6, 1993) (Aplt.'s App. at 1–4). Edwards asserted no claims against Trover in this second lawsuit, and Trover was not a named defendant.

The Union moved to dismiss Edwards' suit on July 29, 1993, asserting it was barred by the six-month statute of limitations prescribed by § 10(b) of the Labor Management Relations Act (LMRA), applicable to "hybrid" § 301/unfair representation actions under *DelCostello*. The district court agreed and entered its Order Granting Defendants' Motion to Dismiss on December 14, 1993. (Aplt.'s App. at 59–64.) Edwards' Motion for

Reconsideration was denied, and the present appeal ensued.

## II. *Merits*

Edwards raises two issues on appeal. First, he contends the fact the Union filed, and lost, a separate § 301 suit against Trover on his behalf precluded him from filing a § 301 claim against Trover and distinguishes this from a "hybrid" § 301/unfair representation action subject to the LMRA's six-month statute of limitations. Instead, Edwards argues his suit more closely resembles a legal malpractice action to which Oklahoma's two-year statute of limitations applies. Second, Edwards claims the six-month limitations period, if applicable, was tolled by the Union's breach of its fiduciary duty (1) to inform him of his right to sue after his grievance was dismissed for untimely selection of the arbitrator; and (2) to respond to his four demand letters.

We review the Union's motion to dismiss Edwards' claims under the same standard applied by the district court. We accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Mascheroni v. Bd. of Regents*, 28 F.3d 1554, 1560 (10th Cir. 1994). We review the district court's determination of the applicable statute of limitations *de novo*. *Trustees of Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co., Inc.*, 850 F.2d 613, 617 (10th Cir.1988). Where, as here, the dates on which the pertinent acts occurred are not in dispute, the date a statute of limitations accrues is also a question of law reviewed *de novo*. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir.1986); *see Lucas v. Mountain States*, 909 F.2d 419 (10th Cir.1990).

## A.

### *Statute of Limitations*

#### 1.

Section 301 of the LMRA makes collective bargaining agreements enforceable in federal court, but provides no statute of limitations for claims brought under it. *See* 29 U.S.C. § 185 (1988). Under these circumstances, courts generally infer Congress intended the most closely analogous state statute of limitations to apply. *See generally Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762–63, 97 L.Ed.2d 121 (1987) (Rules of Decision Act usually requires application of statute of limitations and "[g]iven our longstanding practice of borrowing state law, and the congressional awareness of this practice, we can generally assume that Congress intends by its silence that we borrow state law").

■ This general rule is neither rigid nor mechanically applied, however. Where state limitations periods are at odds with the purpose or operation of federal substantive law, or where they are determined to be unsatisfactory vehicles for its enforcement, federal courts may decline to borrow them and draw instead from federal law. *DelCostello*, 462 U.S. at 161–62, 103 S.Ct. at 2289.[1] In *DelCostello*, the Supreme Court determined federal labor policies and the practicalities of § 301 litigation supported the application of the six-month statute of limitations prescribed by § 10(b) of the LMRA, 29 U.S.C. § 160(b), to "hybrid" § 301/unfair representation suits charging an employer breached a collective-bargaining agreement and the union breached its duty of fair representation. *Id.*, 462 U.S. at 154–55, 103 S.Ct. at 2285–86. We have followed *DelCostello* and applied § 10(b)'s statute of limitations in *Aguinaga v.*

---

**1.** Illustrative examples of cases in which federal interests justified the application of a federal limitations period include *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454–55, 53 L.Ed.2d 402 (1977) (declining to apply state limitations periods to enforcement actions brought by the EEOC under Title VII, reasoning state periods may unduly hinder the policy of the Civil Rights Act of 1964 by placing too great a burden on the agency), *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (applying federal Jones Act

limitations period to seaworthiness action, reasoning the relatedness of the claims and the practicalities of admiralty personal injury litigation made shorter state statute governing personal injuries inappropriate), and *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946) (holding state limitations periods should not apply to federal causes of action lying only in equity because the principles of federal equity are hostile to the "mechanical rules" of statutes of limitations). *See DelCostello* 462 U.S. at 162, 103 S.Ct. at 2289.

*United Food & Commercial Workers Int'l Union,* 993 F.2d 1463, 1472 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994), *Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419, 420 (10th Cir.1990), and *Rucker v. St. Louis Southwestern Ry. Co.,* 917 F.2d 1233, 1237–38 (10th Cir.1990).

█ The "hybrid" suit is a judicially created exception to the general rule that an employee is bound by the result of grievance or arbitration remedial procedures provided in a collective-bargaining agreement. *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967), *discussed in DelCostello,* 462 U.S. at 163–64, 103 S.Ct. at 2289–90. Where an employee can prove he suffered a wrongful discharge in violation of a collective-bargaining agreement that would have been remedied through the grievance process had the union fulfilled its statutory duty to represent the employee fairly, federal law will provide a remedy. *Vaca,* 386 U.S. at 185–86, 87 S.Ct. at 914–15, *applied in Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1983), *and Aguinaga,* 993 F.2d at 1471–72 ("[i]n such instance, the union has effectively ceased to function as the employee's representative"). To leave the employee remediless under these circumstances would, in the words of the Supreme Court, "be a great injustice." *Vaca,* 386 U.S. at 185–86, 87 S.Ct. at 914.

█ Thus, federal law permits an employee to pursue a § 301 action against his employer notwithstanding the outcome or finality of the grievance or arbitration process, provided the employee simultaneously proves he would have obtained a remedy under the agreement but for the union's misconduct. *Vaca* at 186 & n. 11, 87 S.Ct. at 914–15 & n. 11 (citations omitted). It is under this theory of relief that Edwards brought his suit against the Union.

**2.**

█ Nevertheless, Edwards contends his suit against the Union is not a "hybrid" § 301/unfair representation action because it was brought against the Union alone after the Union pursued, and lost, Edwards' § 301 suit against Trover. We disagree. Under the exception to the finality rule set forth in *Vaca,* an employee's unfair representation claim against his union and the underlying § 301 claim against his employer are "inextricably interdependent." *DelCostello,* 462 U.S. at 164–65, 103 S.Ct. at 2291 (quoting *Mitchell,* 451 U.S. at 66–67, 101 S.Ct. at 1566 (Stewart, J., concurring) and *Hines,* 424 U.S. at 570–71, 96 S.Ct. at 1059–60), *applied in Aguinaga,* 993 F.2d at 1471–72. This is true regardless of whether the employee sues the employer, the union, or both.

As the Court explained in *DelCostello,* the case an employee must prove against any defendant is the same:

> "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the [collective-bargaining] contract but must also carry the burden of demonstrating breach of duty by the Union."

*DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291 (internal quotes and citations omitted), *applied in Quay v. Sheffield Steel Corp.,* 25 F.3d 1058 (10th Cir.1994) (unpublished opinion); *Aguinaga,* 993 F.2d at 1469 n. 1 & 1471–72. As between the two, however, the ultimate wrong is that of the employer. *DelCostello,* 462 U.S. at 168, 103 S.Ct. at 2292. Thus, while employees may sue their union for unfair representation, the union may be held liable *"only* for 'increases if any in [the employee's] damages caused by the union's [wrongful conduct in] process[ing] the grievance.'" *Id.* (emphasis original) (quoting *Vaca,* 386 U.S. at 197–98, 87 S.Ct. at 920–21). The result is that a suit against the union is by definition a suit against the employer.[2]

---

2. Although he attempts to do so, Edwards cannot avoid this conclusion by characterizing his suit against the Union as a malpractice, rather than federal "hybrid," action. In any malpractice action alleging an attorney's negligence in allowing the statutory time limit to run resulted in the loss

of a client's claim, it is the value of the underlying claim that provides the measure of the client's damages. *See generally* 7 Am.Jur.2d *Attorney Client* § 226, n. 50. If the underlying claim is unliquidated, the client must introduce evidence justifying his right to recover on the

Because the employer cannot "hide behind the union's wrongful failure to act ... the employer may be (and probably should be) joined as a defendant in the fair representation suit." *Vaca*, 386 U.S. at 197, 87 S.Ct. at 920.

Under the analysis in *Vaca* and *DelCostello*, it is clear Edwards' suit against the Union cannot exist independently of his underlying wrongful discharge grievance against Trover. We find the district court correctly held Edwards could not avoid the six-month statute of limitations applicable to both elements of a "hybrid" claim under *DelCostello* by suing only the Union.

### 3.

Edwards next contends he was precluded from bringing a *DelCostello*-type "hybrid" action because the Union's action to vacate the arbitration award "was" his § 301 suit against Trover. Aplt.'s Reply at 2. Edwards provides no support for his contention and we reject it out of hand. The very purpose behind the creation of the "hybrid" cause of action in *Vaca* was to enable an employee to hold his employer accountable for breaching its collective-bargaining agreement notwithstanding a "final". result obtained for him by his exclusive bargaining agent. *See DelCostello*, 462 U.S. at 164–65, 103 S.Ct. at 2290–91 (discussing *Vaca* and its progeny).

Under *Vaca*, the district court's entry of summary judgment in favor of Trover merely marked the end of the Union's efforts on Edwards' behalf under the collective-bargaining agreement; it did not preclude Edwards from bringing a "hybrid" § 301/unfair representation action against the Union, Trover or both. If Edwards could prove the Union's misconduct prevented him from obtaining a remedy against Trover for wrongful discharge under the terms of the agreement, he would be entitled to relief. *See Vaca*, 386 U.S. at 186, 87 S.Ct. at 914–15. Edwards' contention that the Union's suit against Tro-

ver was somehow *res judicata* is therefore without merit.

### 4.

█ Even assuming his suit against the Union is a "hybrid" action, Edwards contends Oklahoma's two-year statute of limitations for legal malpractice actions should apply. In support of his position, Edwards relies on the Supreme Court's post-*DelCostello* opinion in *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), which limited *DelCostello*'s scope and re-emphasized the general rule favoring application of state statutes of limitations to federal causes of action lacking express limitations periods of their own. We agree *Reed* narrowly circumscribed *DelCostello*'s exception to the general rule favoring state statutes of limitation, but find Edwards' action against the Union nevertheless falls within its reach.

In *Reed*, the Supreme Court rejected a union's contention that § 10(b)'s six-month limitations period should apply to a member's free speech claim against it under § 102(a)(2) of the Labor–Management Reporting and Disclosure Act. The Court ruled the union's argument "fails to take seriously [the Court's] admonition that analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies." *Reed*, 488 U.S. at 327, 109 S.Ct. at 627. It found the union member's claim more analogous to a civil rights action under 42 U.S.C. § 1983 than to an unfair competition claim under the NLRA, and applied the appropriate state statute of limitations for personal injury actions pursuant to *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *Id.* at 326–27, 105 S.Ct. at 1977.

The Court in *Reed* specifically reaffirmed its holding in *DelCostello*, however, explaining that unlike "hybrid" § 301/unfair representation claims, the relationship between § 102(a)(2) claims and federal interests in

underlying claim thus undertaking "the proof of two actions in one." *Id.*, n. 53. Oklahoma law is no exception. *See Allred v. Rabon*, 572 P.2d 979, 981 (Okla.1977) (to prevail in malpractice action against attorney, client must prove he

would have succeeded in the underlying action but for the attorney's negligence). Thus, Edwards' contention that his claim against the Union more closely resembles a legal malpractice action under Oklahoma law is unavailing.

stable bargaining relationships and private dispute resolution were "tangential and remote." *Reed,* 488 U.S. at 330–31 & nn. 4, 5, 109 S.Ct. at 628–69 & nn. 4, 5. The Court found the fact § 102(a)(2) claims "sometimes have some impact on economic relations between union and employer and on labor peace" insufficient to require the application of § 10(b)'s six-month statute of limitations for unfair labor practice claims:

> "This is substantially less immediate and less significant an impact on bargaining and private dispute settlement than that which led us to apply the § 10(b) statute to hybrid § 301/fair representation claims, which directly challenge both the employer's adherence to the collective-bargaining agreement and the union's representation of the employee in grievance-and-arbitration procedures."

*Id.* at 331, 109 S.Ct. at 629.

We find *Reed* bolsters, rather than weakens, the holding in *DelCostello* and its application to Edwards' suit against the Union. Unless and until the Supreme Court or Congress reconsiders *DelCostello,*[3] we are bound to apply § 10(b)'s six-month statute of limitations to *Vaca*-type "hybrid" § 301/unfair representation claims such as the one before us.

For the foregoing reasons, we affirm the district court's determination that a six-month statute of limitations applies to Edwards' suit against the Union for breach of the duty of fair representation.

### B.

### *Accrual/Tolling of NLRA's Six–Month Statute of Limitations*

Should *DelCostello*'s six-month statute of limitations apply to his suit against the Un-

ion, Edwards contends the district court erred in refusing to toll the statute between the time he received notice summary judgment had been entered against him on October 28, 1992 and mid-May 1993, when the Union failed to respond to his fourth demand letter. Aplt.'s Br. at 13. Edwards argues the UPGWA's constitution imposed a fiduciary duty on the Union to "fully inform" him of his legal rights after the court refused to vacate the arbitrator's decision, as well as to respond to his demand letters. Edwards asserts the Union's failure in both regards supports an application of the federal equitable tolling doctrine and brings his suit within § 10(b)'s six-month limitations period.[4]

### 1.

Before addressing the equitable tolling issue, we first determine when Edwards' cause of action against the Union accrued. We first addressed the question of what events signal the commencement of the six-month limitation period for "hybrid" § 301/unfair representation actions in *Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419 (10th Cir. 1990). There we adopted the general rule that the limitation period begins to run when an employee "knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the union's alleged violations." *Id.* at 420–21 (citations omitted).

■ Application of the general rule turns on the context in which the claim arose. When, as in *Lucas,* the union rejects or abandons an employee's claim during the grievance process, the six-month limitations period begins to run when the employee learns, or in the exercise of reasonable diligence, should have learned of the union's action. *Id.* When, on the other hand, a

---

**3.** Various courts and commentators have suggested *DelCostello* be reconsidered. *See, e.g.,* Mark S. Stein, *10(b) or Not 10(b): A Critical Overview of Court–Selected Limitations Periods in Labor Law,* 6 Lab.Law. 331 (1990) (questioning propriety of applying § 10(b)'s statute of limitations for administrative claims filed with the NLRB to civil claims filed in federal district court). *See also Bowdry v. United Air Lines, Inc.,* 956 F.2d 999, 1005 (10th Cir.1992) (discussing split in circuit courts' application of *DelCostello* to former airline employees' claims under the Airline Deregulation Act's Employee Protection

Program), *cert. denied sub nom United Airlines, Inc. v. Hart,* —— U.S. ——, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992).

**4.** Edwards received notice of the district court's refusal to vacate the arbitration award dismissing his grievance in November 1992 and filed his action in July 1993. If the statute of limitations was tolled (or his claim against the Union did not accrue) until May 1993, Edwards' suit would have been timely filed.

union represents an employee throughout the grievance process, a claim challenging the adequacy of that union's representation does not accrue until the dispute resolution process has been completely exhausted. *Id.* at 421. Finally, when the union's alleged breach arises outside the context of processing a grievance, the employee's claim may be tolled by the employee's good faith attempt to exhaust the grievance process. *Id.* at 421–22.

Applying the principles set forth in *Lucas,* the district court determined Edwards' claim against the Union accrued on March 26, 1992—the date the arbitrator dismissed his grievance based on the Union's untimely selection of the arbitrator. (Aplt.'s App. at 63.) As this was fifteen months before Edwards filed the instant action on July 6, 1993, the district court held Edwards' claim was time-barred. *Id.* The district court then opined Edwards' suit would have been time-barred even if the limitation period did not begin to run until the Union's request to vacate the arbitrator's decision was denied on October 28, 1992, as that order was issued eight months before Edwards filed suit. *Id.*

■ The record in this case, viewed in the light most favorable to Edwards, does not conclusively demonstrate Edwards' cause of action against the Union accrued on March 26, 1992. According to Edwards, he had no reason to believe he had exhausted his remedies under the collective-bargaining agreement as of that date because the Union, as his exclusive bargaining agent, led him to believe it could obtain arbitration on the merits of his grievance. Under the standards applicable to a motion to dismiss, we conclude a reasonable trier of fact could find Edwards reasonably believed the arbitration process was not exhausted until he received notice in November 1992 of the district court's October 28, 1992 decision. *See Rucker,* 917 F.2d at 1238 (summary judgment on unfair representation claim could not be predicated on § 10(b)'s statute of limitations where there was evidence to support employ-

ees' claim they were unaware union had abandoned their interests); *King v. New York Tel. Co., Inc.,* 785 F.2d 31, 34–35 (2d Cir.1985) (given the "special relationship" between a union and its members and the fact the union in that case continued to demand arbitration, record did not conclusively demonstrate employee failed to exercise reasonable diligence in learning union had made untimely demand for arbitration), *cited favorably in Lucas,* 909 F.2d at 421. For the purposes of the motion to dismiss at issue here, we find Edwards' cause of action against the Union did not accrue until early November 1992.

### 2.

■ Edwards' suit against the Union is nevertheless time-barred unless the facts as alleged by Edwards support a tolling of the limitations period until at least January 6, 1993—six months before Edwards filed his suit. The district court concluded they do not (Aplt.'s App. at 64), and we agree.

As set forth above, the timely filing of a hybrid § 301/unfair representation claim may be tolled. *See Lucas,* 909 F.2d at 421–22. In *Frandsen v. Brotherhood of Railway, Airline & Steamship Clerks,* 782 F.2d 674, 681 (7th Cir.1986), the Seventh Circuit held a hybrid claim may be tolled "by the pursuit of internal union remedies, even where those remedies are ultimately determined to have been futile." In *King,* the Second Circuit held that in light of the union's control over the grievance process and employee and the employee's relative lack of expertise regarding limitations periods, "it would be incongruous if the [u]nion's own dilatory conduct could provide it with a defense" to an unfair representation suit. 785 F.2d at 34–35.

Though unclear, Edwards appears to argue the Union lulled him into inaction after the district court's October 28, 1992 order granting Trover summary judgment by failing to inform him he had six months to sue and by refusing to respond to his demand letters.[5] Edwards points out that in defending against Trover's claim that the Union had unreasonably delayed in selecting an arbitra-

---

5. This we glean from Edwards' contention that the Union's failure to so inform him or to respond to his counsel's demand letters breached fiduciary duties owed him under the UPGWA

Constitution. Because Edwards asserts no claim for breach of fiduciary duty against the Union, his contention would otherwise have no impact on the equitable tolling issue.

tor, the Union justified its conduct as the result of its time-consuming regional and national review process. Edwards explains his own inaction with respect to filing this suit by stating he assumed his November 1992 demand letter was receiving the same treatment. (Aplt.'s App. at 6.)

Again construing the record in the light most favorable to Edwards, we find these facts do not rise to the level of "active deception" sufficient to invoke the powers of equity and toll the legal limitations period for hybrid actions set by the United States Supreme Court in *DelCostello.* Throughout the eight-month period between the district court's October 28, 1992 order and the date this suit was filed, Edwards was represented by counsel who, as evidenced by the content of his demand letter dated November 28, 1992, was fully aware of the Union's misconduct. Under these circumstances, it would have been unreasonable for Edwards to believe his remedies under the collective-bargaining agreement had not been exhausted or that his claim against the Union had not accrued. *See King v. New York Tel. Co., Inc.,* 873 F.2d 36, 38 (2d Cir.1989) (reliance on Union's overtures to attempt arbitration unreasonable in light of representation by counsel), *decided on appeal after remand from King v. New York Tel. Co., Inc.,* 785 F.2d 31 (2d Cir.1986). The most that can be said in these circumstances is the patience and deference shown an insentient bargaining agent are not warranted by a harsh reality.

The application of equitable doctrines rests in the sound discretion of the district court. *Purrington v. University of Utah,* 996 F.2d 1025, 1030 (10th Cir.1993); *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross, et al.,* 651 F.2d 687, 694 & n. 15 (10th Cir.1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). We find the district court did not abuse its discretion in refusing to apply the equitable tolling doctrine to Edwards' claims, and its Order Granting Defendants' Motion to Dismiss is therefore AFFIRMED.