**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 23 1998**

**PATRICK FISHER**
Clerk

PUBLISH

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

ROBERT REPSTINE; BN GENERAL
COMMITTEE OF ADJUSTMENT
(former C&S) -- GO-291,

      Plaintiffs - Appellants,

   v.

BURLINGTON NORTHERN, INC., a
Delaware corporation; UNITED
TRANSPORTATION UNION,

      Defendants - Appellees.

No. 96-1387

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 95-WY-764-CB)**

---

Gordon S. Gannicott (David J. Hollander and David Straton with him on the
briefs), Hollander, Lebenbaum & Gannicott, Portland, Oregon, for appellants.

Charles W. Shewmake, Fort Worth, Texas (Lawrence M. Stroik, Fort Worth,
Texas, and Walter J. Downing, Denver, Colorado, with him on the brief), for
appellees.

---

Before ANDERSON, EBEL, and HENRY, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

Plaintiffs and appellants Robert Repstine and BN General Committee of Adjustment (former C & S) GO-291 appeal the grant of summary judgment to defendant Burlington Northern, Inc. ("BN") in this case involving the Railway Labor Act ("RLA"), 45 U.S.C. § 152. We affirm.

## BACKGROUND

Defendant United Transportation Union ("UTU") is the certified collective bargaining representative for BN employees in the crafts or classes of trainmen, conductors, locomotive firemen, yardmen and yardmasters.[1] Plaintiff GO-291 is one of the committees comprising UTU, and plaintiff Mr. Repstine is the chairman of GO-291.

In October 1991, BN and UTU collectively bargained a new crew consist agreement applicable to all of UTU's committees, including GO-291.[2] This agreement ("1991 agreement") incorporated a crew consist agreement moratorium from a previous crew consist agreement, pursuant to which a moratorium was

[1]Initially, BN and UTU were co-defendants in this case. Plaintiffs have subsequently settled their claims against UTU. UTU remains a nominal defendant under Fed. R. Civ. P. 19 for the purposes of enabling complete relief.

[2]A crew consist agreement governs the size of, and pay terms applicable to, the crew operating each train.

placed on further bargaining on the agreement without the express agreement of the parties. Apparently, at the time the 1991 agreement was signed, BN verbally agreed to give UTU employees the option to later adopt any subsequent crew consist agreement entered into by BN employees not subject to the 1991 agreement. BN claims the offer was an "all or nothing" offer, whereby any subsequent crew consist agreement would have to be adopted on a union-wide basis or not at all. Mr. Repstine argues each individual UTU committee, including his own, GO-291, retained the authority to accept or reject any subsequent crew consist agreement.

In May 1993, BN negotiated a new crew consist agreement with certain BN employees not subject to the 1991 agreement. BN then notified UTU in June 1993 that it could adopt the new crew consist agreement ("1993 agreement") on an all or nothing basis. In September 1993, UTU's president notified BN that all of UTU's committees had ratified the 1993 agreement except GO-291. The president requested that the agreement be implemented on all UTU committees except GO-291, but BN apparently declined to do so.

On October 14, 1993, UTU's president informed BN that a majority of its representatives had ratified the 1993 agreement and advised BN to implement the agreement on November 1, 1993, on all committees, including GO-291. Mr. Repstine, on behalf of GO-291, informed BN that GO-291 had appealed UTU's

decision to adopt the 1993 crew consist agreement to UTU's Board of Directors. Mr. Repstine also told BN that GO-291 would take action to nullify the agreement if UTU's Board sustained its appeal. Under UTU's constitution, the internal appeal was mandatory. See Volkman v. United Transp. Union, 73 F.3d 1047, 1056 (10th Cir. 1996) (noting that under UTU's constitution, "the internal appeal was not optional.").

On October 10, 1994, UTU's Board of Directors rejected GO-291's internal appeal. Mr. Repstine and GO-291 filed this action against UTU and BN on April 5, 1995, alleging breach of the duty of fair representation, Railway Labor Act violations, and breach of contract. The district court granted BN's motion for summary judgment, concluding that the statute of limitations barred plaintiffs' claims. Plaintiffs' claims against UTU were settled. Mr. Repstine and GO-291 appeal the grant of summary judgment to BN. Mr. Repstine and GO-291 members are currently employed under the terms of the 1993 agreement.

## DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standards applied by the district court. Young v. United Auto. Workers-Labor Employment & Training Corp., 95 F.3d 992, 996 (10th Cir. 1996).

-4-

Accordingly, summary judgment is properly granted where there is no genuine issue of material fact for trial. Id.

Mr. Repstine and GO-291 allege that UTU breached its duty of fair representation; that BN violated the RLA; and that BN committed a common law breach of contract when it implemented the 1993 crew consist agreement, in violation of the moratorium clause of the 1991 crew consist agreement.

In this appeal, we address only the propriety of the district court's grant of summary judgment to BN. Plaintiffs' RLA argument asserts that BN violated 45 U.S.C. § 152, First, Second, Third, Fourth, and Ninth, by refusing to bargain in good faith and by interfering with, influencing and/or coercing GO-291, all stemming from BN's imposition of the 1993 agreement on GO-291 without GO-291's agreement or approval. As indicated, the district court held that plaintiffs' claims against BN were barred by the six-month statute of limitations, and it rejected plaintiffs' argument that the statute of limitations was tolled while they pursued internal union appeals.

## 1. Statute of Limitations for RLA Claim

The RLA contains no limitations period itself. However, courts uniformly hold that the six-month limitations period from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies. See, e.g., Lancaster v. Air Line Pilots

Ass'n. Int'l, 76 F.3d 1509, 1527 (10th Cir. 1996), abrogated by __ S. Ct. __, 1998 WL 259977 (May 26, 1998); Barnett v. United Air Lines, Inc., 738 F.2d 358, 362-64 (10th Cir. 1984); see also West v. Conrail, 481 U.S. 35, 38 & n. 2 (1987). BN argues plaintiffs' claims accrued, and the limitations period commenced to run, on November 1, 1993, the date the 1993 agreement was implemented. Plaintiffs argue the limitations period did not begin to run until October 10, 1994, the date on which UTU's Board of Directors rejected GO-291's internal union appeal, thereby exhausting plaintiffs' internal union appeals. If BN is correct that the limitations period was not tolled during the pendency of the internal union appeal, plaintiffs' claims, filed on April 5, 1995 (seventeen months later), were untimely.

Plaintiffs argue that their claims are "hybrid," which we have recently described as "a judicially created exception to the general rule that an employee is bound by the result of grievance or arbitration remedial procedures provided in a collective-bargaining agreement." Edwards v. International Union, United Plant Guard Workers of America, 46 F.3d 1047, 1051 (10th Cir. 1995) (citing Vaca v. Sipes, 386 U.S. 171, 185-86 (1967)). In a typical "hybrid" claim, an employee claiming wrongful discharge in violation of the collective bargaining agreement argues that the "employer breached a collective-bargaining agreement and the union breached its duty of fair representation" in connection with the grievance process the employee followed after his discharge. Id. at 1050. In such a case,

-6-

the "employee's unfair representation claim against his union and the underlying § 301 claim against his employer are 'inextricably interdependent.'" Id. at 1051 (quoting DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983)). As the Supreme Court has explained, in a "hybrid" action, "'[t]o prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the [collective-bargaining] contract but must also carry the burden of demonstrating breach of duty by the Union.'" DelCostello, 462 U.S. at 165 (quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66-67 (1981)). Thus, "the case an employee must prove against any defendant is the same." Edwards, 46 F.3d at 1051.

Special limitations rules apply to such "hybrid" claims. Rather than having to sue the employer within six months of the breach, and then sue the union within six months of the exhaustion of an internal union appeals, a "hybrid" claim may be tolled in its entirety until the internal union appeals have been exhausted. Volkman, 73 F.3d at 1054; see also Edwards, 46 F.3d at 1054. Plaintiffs argue that, since their action against BN is part of a "hybrid" claim, the six-month statute of limitations was tolled by their pursuit of their internal union appeal.

BN responds that plaintiffs' suit is not truly a "hybrid" claim because the claims against BN and against UTU are independent. The district court agreed:

> Unfortunately for Repstine, his claims are not typical "hybrid" claims and the limitations rules that apply to typical hybrid actions

-7-

do not apply here. In this case, Repstine's claims are "hybrid" only in the sense that he has asserted duty of fair representation claims against UTU and breach of contract claims against BN. These claims are not, however, "inextricably interdependent."

Order at 10, Appellants' App. at 127. We agree as well. While, as plaintiffs assert, they challenge conduct of both UTU and BN surrounding the implementation of a contract involving both UTU and BN, the district court correctly observed that they challenge "two courses of action that at times overlap, but which essentially are independent." Id. at 128.

Plaintiffs' claims against UTU, now settled, essentially involve, as the district court found, "an intra-union dispute over UTU's obligations to GO-291 and UTU's authority over GO-291." Id. at 129. They involve plaintiffs' claim that UTU violated the Coordination Agreement between UTU and GO-291 and that UTU violated its constitution by first telling BN it should implement the 1993 agreement on all southern lines except GO-291 and then telling BN it should implement it on all southern lines including GO-291, despite GO-291's objection.[3] None of those claims necessitate proof that BN violated the collective-bargaining agreement.

_____

[3]UTU and its constituent committees, like GO-291, entered into a Coordination Agreement which designated certain coordination committees as the "person or entity" to receive notices under the RLA, 45 U.S.C. § 152, Sixth, and to otherwise treat with BN.

Similarly, plaintiffs' claims against BN involve allegations of improprieties committed by BN unilaterally in connection with its implementation, over GO-291's objection, of the 1993 agreement.[4] Cf. Garcia v. Eidal Int'l Corp., 808 F.2d 717, 721 (10th Cir. 1986) ("Because [the employer] allegedly acted unilaterally, its potential liability . . . is properly viewed as distinct from that of the union."). Plaintiffs have conceded that their complaint did not allege any collusion or conspiracy between BN and UTU in connection with the implementation of the 1993 agreement. Rather, it alleges separate and discrete legal claims against both UTU and BN. While, as we have indicated, the claims all relate generally to the implementation of the 1993 agreement, to which both BN and UTU acceded, each defendant's *particular* course of conduct was pursued separately and involved different allegedly unlawful conduct, and any damage flowing therefrom would be redressed separately.[5]

---

[4]In their complaint, plaintiffs asserted that BN's "unilateral implementation of the Crew Consist Agreement on members of GO-291 constituted an unlawful interference with, influence and/or coercion of the UTU." Complaint ¶ 32, Appellants' App. at 18.

[5]In support of its determination that plaintiffs' claims were not true "hybrids," the district court considered the type of relief plaintiffs could expect from each set of claims. As the court explained:

If Repstine prevails on his claims against UTU, he might obtain declaratory relief and attorneys fees. Practically speaking, the Court would issue a judgment stating that UTU had violated its agreements with GO-291 and its constitution by failing to insist that BN deal

(continued...)

-9-

Indeed, plaintiffs settled their claims with UTU, yet their claims against BN evidently still proceed. We observed in Edwards that the employee's hybrid "suit against the Union cannot exist independently of his wrongful discharge grievance against [his employer]." Edwards, 46 F.3d at 1052. That is apparently not the case here. In fact, plaintiffs moved for summary judgment against BN alone and never sought summary judgment against UTU.

Moreover, as we stated in Edwards, in a typical "hybrid" case involving wrongful discharge, "the ultimate wrong is that of the employer." Edwards, 46 F.3d at 1051. In this case, by contrast, the "ultimate wrong" is not that of BN.

---

[5](...continued)
directly with GO-291, and by endorsing the new crew consist agreement on behalf of all Southern Lines committees. As is evident, this relief neither implicates nor affects BN.

Along these same lines, if Repstine prevails on his claims against BN, he might obtain declaratory and injunctive relief. Practically speaking, the Court would issue a judgment stating that BN had violated the collective bargaining agreement (and the RLA) and would enjoin BN from imposing the new crew consist agreement on GO-291. As is evident, this relief neither implicates nor affects UTU or the other Southern Lines committees. Such relief would not and could not alter the Court's assessment of Repstine's claims against UTU (claims involving intra-union agreements and the UTU constitution).

Order at 12-13, Appellants' App. at 130-31.

Plaintiffs' claims against both UTU and BN equally allege an "ultimate wrong." Either set of claims could stand without the other.[6]

Plaintiffs rely heavily on Volkman for their argument that the statute of limitations in their action against BN should have been tolled pending their pursuit of internal union appeals. In Volkman, employees of a railroad sued the same union as in this case (UTU) as well as the railroad/employers, arguing that UTU breached its duty of fair representation and that the railroad had violated a labor protective agreement, all in connection with the negotiation of the agreement implementing the labor protective agreement. We evidently assumed without specific discussion that the employees' claim was a "hybrid" to which the six-month statute of limitations applies, and then considered whether the statute should have been tolled pending the employees' pursuit of mandatory internal union appeals.[7] The district court opinion makes it clear that the claim was a

_____

[6]For instance, plaintiffs could have *no* claim against BN, because there was no argument that BN violated the collective bargaining agreement in offering the 1993 agreement to UTU, yet they could still pursue their claim against UTU, asserting that UTU's conduct violated its own constitution and the Coordination Agreement with plaintiffs. Similarly, as plaintiffs conceded at oral argument, they could have brought their claims directly against BN, without including any claims against UTU.

[7]As indicated supra, the UTU constitution requires exhaustion of internal appeals:

> [The UTU constitution] provides that no member "shall resort to the
> civil courts to correct or redress any alleged grievance or wrong, or

(continued...)

-11-

"hybrid" claim, and it also makes clear the joint and collusive nature of the defendants' conduct. Volkman v. United Transportation Union, 724 F. Supp. 1282, 1309, 1317 (D. Kan. 1989), rev'd, 73 F.3d 1047 (10th Cir. 1996).[8]

In this case, by contrast, we have concluded that plaintiffs do not present a true "hybrid" claim. We therefore need not consider whether Volkman compels the conclusion that UTU's mandatory internal union appeal process requires us to toll the statute of limitations for a hybrid claim against the employer.[9]

---

[7](...continued)
to secure any alleged rights" from the union until the member "shall have first exhausted all remedy by appeal provided in this Constitution for the settlement and disposition of any such rights, grievance, or wrongs."

Volkman, 73 F.3d at 1056.

[8]The court referred to evidence indicating "[t]he deceptive and conspiratorial conduct of defendants." Volkman, 724 F. Supp. at 1309.

[9]In Volkman, we acknowledged that in a hybrid breach of duty of fair representation and breach of contract case "ordinarily, a plaintiff must exhaust internal union appeals before filing suit, and the statute of limitations is tolled during those appeals." Volkman, 73 F.3d at 1054. However, we noted that there is no bright line rule. We discussed and cited Frandsen v. Brotherhood of Ry., Airline & Steamship Clerks, Freight Handlers, Express and Station Employees, 782 F.2d 674 (7th Cir. 1986). In Frandsen, the court held "that the statute of limitations is tolled against both the union and the railroad while the employee pursues internal union remedies, even if those administrative appeals are futile, as long as the employee makes a duty of fair representation claim based on a collusion of union and employer." Id. at 686 (emphasis added). Thus, the joint and interdependent nature of the union's and the employer's conduct must be evident for the tolling rule to apply. That joint and interdependent conduct was present in Frandsen and in Volkman, as it is in a typical "hybrid" claim, but is not
(continued...)

-12-

## 2. Common Law Breach of Contract Claim

Plaintiffs also allege that "BN breached the terms of the 1991 Crew Consist Agreement, in particular the moratorium clause, by implementing the 1993 Crew Consist Agreement on Plaintiffs." Appellants' Opening Br. at 21. They argue that this constitutes a common law breach of contract, subject to Colorado's three year statute of limitations. As BN argues, plaintiffs failed to include this claim in their complaint, nor did they argue it before the district court in their filings in opposition to BN's motion for summary judgment, nor did the district court address it.[10] We decline to address an argument presented for the first time on

_____

[9](...continued)
present here.

Similarly, plaintiffs urge us to follow Lancaster v. Air Line Pilots Ass'n. Int'l, 76 F.3d 1509, 1528 (10th Cir. 1996), abrogated by __ S. Ct. __, 1998 WL 259977 (May 26, 1998), in which we cited Volkman for the proposition that "[i]f the objecting employee . . . pursues his nonjudicial remedies in good faith, the limitations period is tolled until the nonjudicial proceedings are completed." In Lancaster, the union asked the employer to terminate the employee for failing to pay a strike assessment, as apparently required by the collective bargaining agreement. Like Volkman and Frandsen, the interdependent nature of the conduct of both defendants—the union and the employer—was evident. Tolling of the entire claim, as in a typical "hybrid" claim case, therefore made sense. As indicated, this is not the case here, where the conduct of, and the claims against, each defendant are distinct.

[10]The district court rejected an argument plaintiffs apparently made based on a claimed violation of the Merger Protection Agreement. The court found no reference to such a claim in plaintiffs' complaint, and concluded, additionally, that the Agreement's procedural requirements and arbitration provisions rendered the court unable to consider the claim. On appeal, plaintiffs do not pursue the

(continued...)

-13-

appeal.  <u>Swanson v. Guthrie Indep. Sch. Dist.</u>, 135 F.3d 694, 698 (10th Cir. 1998).[11]


## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision granting summary judgment to defendant BN.

---

[10](...continued)
argument based on the Merger Protection Agreement, but they do assert the more general common law breach of contract claim.

[11]Because we affirm the district court's judgment on statute of limitations grounds, we need not address BN's argument that plaintiffs have manifested acceptance of the 1993 agreement.