**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MYONG LIM, a/k/a Terry Holscher,
individually and as managing member of
FR Licensing, LLC,

     Plaintiff - Appellant,

and

FR LICENSING, LLC; MARKET
RESEARCH & PUBLIC RELATIONS,
LLC,

     Plaintiffs,

v.

CHARLES EUGENE BOONE, a/k/a Pat,
individually; PBE INC. MANAGING
MEMBER; CARL FERGUSON,
individually; ROGER PRAHER,

     Defendants - Appellees.

No. 21-8022
(D.C. No. 2:20-CV-00167-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **MORITZ**, **KELLY**, and **CARSON**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiffs sued defendants alleging breach of two agreements.  Defendants

Charles Eugene Boone and PBE Inc. (collectively, "Boone") moved to dismiss

plaintiffs' second amended complaint under Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim, arguing that plaintiffs' claims were barred by the

applicable statute of limitations.  The district court granted the motion and dismissed

plaintiffs' claims against Boone with prejudice.[1]

Plaintiff Myong Lim appeals the district court's order dismissing her claims

against Boone.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

Our factual summary is taken from plaintiffs' second amended complaint

(SAC), which was the operative complaint in the district court.

### A.    The Parties' Agreements

Plaintiffs are Lim, FR Licensing, LLC ("FRL"), and Marketing Research &

Public Relations, LLC ("MRPR").  The SAC incorporated by reference a Trademark

License Agreement ("License Agreement") and an Independent Marketing and Public

Relations Agreement ("Marketing Agreement").  Both agreements were executed on

September 4, 2009.

In the License Agreement, plaintiff FRL licensed a trademark to

DF Worldwide LLC ("DFW") for use on "*Processed (precooked) meat snacks*" in a

---

[1] The district court's judgment in favor of Boone became final upon the court's
subsequent entry of a default judgment against the remaining defendants.

2

territory defined as "Duty Free Travel Retail Worldwide."  Aplt. App. at 29.  The

License Agreement had an initial two-year term, during which DFW agreed to pay

FRL a royalty based on its net sales of licensed products.  The contract provided that

"[t]he Royalty owed [FRL] shall be calculated on a monthly basis (the 'Royalty

Period') and shall be payable no later than fifteen (15) days after the termination of

the preceding full month."  *Id.* at 18.  In the event that DFW "fail[ed] to make timely

payment of Royalties when due two or more times during any twelve-month period,"

FRL had "the right to immediately terminate" the License Agreement.  *Id.* at 23.  The

agreement included the following additional royalty terms:

> 5.  Royalty Rate
> [DFW] shall pay the following royalty rate: FIFTY PERCENT (50%) based on
> end users price paid for branded goods.
> (a) [DFW] guarantees minimum $500,000. annual royalty.

*Id.* at 29.

The License Agreement specified a "Product Introduction Date" of

"September, 2009" and an "Initial Shipment Date" of "September, 2010," *id.* at 31,

but also stated the parties' intent that DFW would introduce and ship the product "on

or before" those dates, *id.* at 20.  And the SAC alleged that the licensed product was

originally "offered for retail sale . . . in April 2009," before the License Agreement

was executed.  *Id.* at 119.  The SAC further alleged that "[d]efendants continued to

ship product as late as July and August 2010."  *Id.* at 120.

Under the Marketing Agreement, plaintiff MRPR agreed to provide marketing

and public relations services to DFW for one year.  In exchange, DFW agreed to pay

MRPR "$132,000 per year as follows; $32,000. upon signing, and $11,000. per month thereafter from . . . Nov. 2009 through July 2010." *Id.* at 38.

## B.    District Court Proceedings

Plaintiffs filed their original complaint on September 2, 2020, and a first amended complaint shortly thereafter.  Plaintiffs did not name DFW as a defendant.  They alleged that DFW had been dissolved and was the alter ego of a partnership between the other defendants, and that PBE was an alter ego of Boone.  Boone moved to dismiss plaintiffs' first amended complaint based on the statute of limitations.  The district court granted Boone's motion, but allowed plaintiffs leave to amend, after which they filed the SAC.

Counts One and Two of the SAC alleged that defendants breached the License Agreement and the Marketing Agreement, respectively.  Plaintiffs alleged that the only payment defendants made under either agreement was the initial $32,000 due under the Marketing Agreement.  Plaintiffs pointed specifically to defendants' "fail[ure] and refus[al] to pay the guaranteed annual royalty amount of $500,000.00 [under the License Agreement] on or before September 4, 2010." *Id*. at 120.

Boone moved to dismiss Counts One and Two, arguing that the relevant facts supporting a statute-of-limitations defense were disclosed on the face of the SAC, including the two agreements incorporated therein.  The district court applied Wyo. Stat. Ann. § 1-3-105(a)(l), which required plaintiffs to file their claims within ten years of defendants' breach of the contracts.  The court noted that plaintiffs did not

4

argue the ten-year limitations period should be extended by any tolling doctrine. Rather, the parties disagreed as to when a breach occurred.

### A.    Count One – Breach of the License Agreement

Boone asserted that monthly royalty payments were due under the License Agreement beginning in October 2009, or at the latest by November 2009. He based this conclusion on (1) the SAC's allegation that DFW began selling the licensed product even before the parties executed the License Agreement on September 4, 2009, and (2) the agreement's provision that royalty payments "shall be calculated on a monthly basis (the 'Royalty Period') and shall be payable no later than fifteen (15) days after the termination of the preceding full month." Aplt. App. at 18. Thus, because the alleged breach occurred by November 2009, Boone argued that plaintiffs were required to file their claims under the License Agreement by November of 2019; consequently, their original complaint filed on September 2, 2020, was untimely.

Plaintiffs disagreed, pointing to DFW's guaranteed minimum annual royalty under the License Agreement. They contended that provision afforded them the right to treat the missed monthly royalty payments as anticipatory breaches until the contract anniversary date of September 4, 2010, when defendants then breached the License Agreement by failing to pay the first guaranteed $500,000 annual royalty. Because plaintiffs filed their lawsuit less than ten years later, on September 2, 2020, they argued it was timely.

5

The district court noted the parties' contentions required it to construe the License Agreement as a matter of law. It held that under the plain language of the contract, royalty payments were due monthly rather than annually. Thus, defendants allegedly breached the License Agreement by failing to make any monthly payments. And based upon the SAC's allegation that defendants began shipping product before the License Agreement was executed in September 2009, the court held that monthly royalty payments became due beginning in October 2009.

The district court further concluded that plaintiffs did not have a right to treat defendants' breaches of the monthly royalty obligation as merely anticipatory until the end of the first year of the License Agreement's term. Pointing to the provision giving plaintiffs a right to terminate immediately if defendants missed two royalty payments within a twelve-month period, the court concluded that missing two payments constituted a material breach. And because defendants had therefore materially breached the License Agreement by November 2009, plaintiffs had until November 2019 to file their claims. Thus, the district court held that Count One, filed on September 2, 2020, was barred by the statute of limitations.

## B.    Count Two – Breach of the Marketing Agreement

Boone argued that the alleged breach of the Marketing Agreement also occurred by November 2009 when defendants did not remit the first $11,000 monthly payment after having made the initial $32,000 payment, as alleged in the SAC. The district court noted that plaintiffs did not expressly address the Marketing Agreement in response to Boone's motion to dismiss. But they appeared to apply the same

6

reasoning to both contracts, asserting they could elect to treat defendants' failure to make the monthly payments under the Marketing Agreement as anticipatory breaches until the contract anniversary when defendants failed to pay the full $132,000. The court rejected plaintiffs' construction because it would make the specified payment schedule in the Marketing Agreement meaningless.[2] Moreover, plaintiffs had filed their claims more than ten years after the final monthly payment was due in July 2010. Thus, the court held that Count Two was also barred by the statute of limitations.

The district court granted Boone's motion and dismissed plaintiffs' claims against Boone with prejudice.

## II.    Discussion

On appeal, Lim contends that the district court erred in dismissing her claims against Boone by (1) drawing impermissible adverse inferences from the SAC and (2) "ignoring the common law right to elect to file suit upon anticipatory breach," Aplt. Br. at 15.

When a statute-of-limitations defense appears on the face of a complaint, a district court may properly dismiss it for failure to state a claim under Rule 12(b)(6). *See Frost v. ADT, LLC*, 947 F.3d 1261, 1267 (10th Cir. 2020). In doing so, the court may "interpret[] contractual provisions, determining the parties' respective rights and

---

[2] The district court noted that the initial and monthly payments specified in the Marketing Agreement would amount to only $131,000. But it held that "the parties' intent that $32,000 was to be paid up front with the remainder to be paid monthly is clear and unambiguous." Aplt. App. at 161 n.2.

obligations thereunder." *Id.* "We review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). "Where . . . the dates on which the pertinent acts occurred are not in dispute, the date a statute of limitations accrues is also a question of law reviewed *de novo*." *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995).

Pointing to the district court's decision that defendants' failure to pay monthly royalties was a material breach of the License Agreement, Lim contends that the district court made adverse factual inferences rather than construing the SAC's allegations in the light most favorable to plaintiffs. *See Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014) ("At the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." (internal quotation marks omitted)). This argument misconstrues the court's analysis. It accepted as true the SAC's allegation that defendants failed to make any monthly royalty payments. It then construed the parties' intent as reflected in the terms of the License Agreement. *See Schell v. Scallon*, 433 P.3d 879, 884-85 (Wyo. 2019). And it did so as a matter of law, looking only at the four corners of the agreement. *See id.*

Lim acknowledges that a breach-of-contract claim accrues when a material breach occurs. But she argues that the monthly-royalty-payment obligation in the License Agreement was immaterial. The district court held otherwise, after interpreting the contract as a whole, reading its provisions in light of each other, and

determining their plain meaning—all consistent with the contract-interpretation standards in *Schell*. *See id.* In particular, the district court relied on the License Agreement's provision giving plaintiffs the right to terminate the contract immediately if defendants missed two or more monthly royalty payments within a twelve-month period. Lim ignores that provision and offers no other legal analysis challenging the district court's contract construction. She therefore fails to show the district court erred in concluding, as a matter of law, that defendants' failure to make the required monthly royalty payments constituted a material breach of the License Agreement.

Lim's second argument for reversing the district court is similarly unavailing. Lim suggests that the failure to pay monthly royalties was an anticipatory breach which allowed her to wait to file her action until after an actual or complete breach occurred—that is, until after the defendants failed to satisfy the annual minimum royalty. "[A] party's repudiation of its duty before the time for performance has arrived is called anticipatory breach, or more precisely, anticipatory repudiation." *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 254 (Wyo. 2000). And "courts have accepted the general rule that an anticipatory repudiation gives the injured party an immediate claim to damages for total breach." *Id.* (brackets and internal quotation marks omitted). But the injured party may alternatively elect "to await the time for performance of the contract and bring suit after that time has arrived." *Bu-Vi-Bar Petroleum Corp. v Krow*, 40 F.2d 488, 491 (10th Cir. 1930) (internal quotation marks omitted).

9

But Lim again bases her argument on the faulty premise, rejected by the district court, that no breach occurred when defendants failed to make monthly royalty payments in October 2009. As the district court found, the SAC alleged an actual, material breach when the defendants failed to make monthly payments at the time they were due—it did not allege that defendants repudiated the License Agreement before the time for performance of monthly royalty payments arrived. *See Roussalis*, 4 P.3d at 254 (defining anticipatory breach as "a party's repudiation of its duty *before the time for performance has arrived*" (emphasis added)). Thus, the district court correctly held that plaintiffs could not elect to treat defendants' breaches of the monthly royalty obligation as merely anticipatory until the end of the first year of the License Agreement's term.[3] Lim fails to show the district court erred in dismissing Count One as barred by the ten-year statute of limitations.

Lim's appeal brief does not address the district court's dismissal of Count Two, in which plaintiffs alleged that defendants breached the Marketing

---

[3] Lim also appears to argue that the License Agreement was an installment contract, which permitted plaintiffs to wait to sue until after the time fixed for full and final performance. Plaintiffs made this argument in response to Boone's motion to dismiss their first amended complaint. But the district court found that plaintiffs abandoned this installment-contract position in opposing Boone's motion to dismiss the SAC. *See* Aplt. App. at 160 n.1 ("In their response to the present motion [to dismiss the SAC], Plaintiffs no longer contend the License Agreement's royalty payments should be considered as installments."). Therefore, plaintiffs did not preserve the issue in the district court. *See Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012) ("An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." (internal quotation marks omitted)). And Lim does not argue for plain error review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011).

Agreement by failing to make the required payments under that contract. She has therefore forfeited appellate consideration of that ruling. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). But even if we construe her arguments regarding the dismissal of Count One as also challenging the dismissal of Count Two, her contentions do not demonstrate error in the district court's holding. Like the License Agreement, the Marketing Agreement plainly required monthly payments, the first of which was due in November 2009 and the last of which was due in July 2010. But Plaintiffs did not file suit until September 2020. Therefore, the district court correctly held that Count Two was also untimely under the ten-year statute of limitations.

## III.     Conclusion

The relevant facts supporting Boone's affirmative defense under the statute of limitations were disclosed on the face of the SAC. Lim therefore fails to show that the district court erred in dismissing with prejudice her claims against Boone for failure to state a claim under Rule 12(b)(6). We affirm the district court's judgment.

Entered for the Court

Nancy L. Moritz
Circuit Judge

11