Kim DOUGLASS, Plaintiff,

v.

UNITED AUTO WORKERS, LOCAL 31, Defendant.

No. CIV.A. 03–2394CM.

United States District Court, D. Kansas.

March 31, 2005.

See, also, 2005 WL 1039148.

Kim F. Douglass, Kansas City, MO, pro se.

Bruce C. Jackson, Jr., Arnold, Newbold, Winter, Jackson and Jocoby, PC, Kansas City, MO, for Defendant.

### *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

On August 5, 2003, Kim Douglass, a pro se plaintiff, brought suit against defendant United Auto Workers ("UAW"), Local 31 claiming race and gender discrimination and a hostile work environment in violation of the Civil Rights Act of 1964 ("Title VII"), age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act of 1990 ("ADA"), Occupational Safety and Health Act ("OSHA") violations, violation of UAW's duty of representation and failure to represent, and requesting declaratory and injunctive relief. Plaintiff also brought suit against General Motors Corporation ("GM"), case number 03–2325. The two cases were consolidated for discovery purposes only. Both GM and UAW have filed summary judgment motions. Although many of the claims against GM and UAW are the same or similar, the court will address the defendants' motions separately. Pending before the court is UAW's Motion for Summary Judgment (Doc. 22).

## I. Facts [1]

As a preliminary matter, plaintiff failed to specifically controvert any facts submitted by UAW. Therefore, pursuant to D. Kan. Rule 56.1(a), all facts submitted by UAW are deemed admitted by plaintiff.

Plaintiff is an African–American female who was born on November 6, 1956. Plaintiff was hired by GM as an hourly employee on July 14, 1977, and worked at the GM Leeds Plant, located in Kansas City, Missouri, until it closed in 1987. Plaintiff transferred to the Fort Wayne, Indiana GM plant in September 1991. In September 1994, plaintiff transferred back to GM's Kansas City, Kansas Fairfax plant.

Plaintiff became a member of UAW Local 31 and UAW in September 1994. GM and UAW are parties to a national collective bargaining agreement, and UAW Local 31 and GM are parties to a local collective bargaining agreement. Both collective bargaining agreements govern the hours, wages, working conditions and other terms and conditions of employment of bargaining unit employees employed at the Fairfax plant, including plaintiff.

Pursuant to GM's worker's compensation policy and the terms of the collective bargaining agreement, employees with work-related injuries are sent to the plant medical department for medical release and verification of their restrictions. The restrictions are then placed on a Notice of Restriction form and forwarded to an Accommodating Dis–Abled People in Transition ("ADAPT") program placement repre-

sentative. The ADAPT program, a joint program between UAW and GM, attempts to place GM employees with medical restrictions in jobs that are consistent with the individual's medical restrictions and plant seniority. If ADAPT is unable to place an employee in a position that meets her restrictions, the employee is placed on a paid medical leave of absence.

In October 1994, plaintiff stopped working at the Fairfax plant because of shoulder injuries. Between October 1994 and July 1995, plaintiff was on medical leave and worked only one day because the Fairfax plant did not have available positions within her restrictions.

Plaintiff had knee surgery for a nonwork related knee injury in July 1995, and did not return to work until February 2001. During her absence from GM between July 1995 and February 2001, plaintiff received benefits from GM pursuant to the terms of the collective bargaining agreement.

The collective bargaining agreement between GM and UAW provides that employees who have been absent from the plant for more than thirty days can be asked to take a functional capacity examination. The functional capacity examination determines the employee's abilities to perform the physical tasks required to work in various assembly plant jobs. On January 11, 2001, plaintiff took a functional capacity examination. On or about February 6, 2001, GM notified plaintiff that there was a position available within her restrictions and requested plaintiff return to work on February 12, 2001. Plaintiff

---

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56. However, in most instances, plaintiff failed to cite to the record. In other instances, the record simply did not support plaintiff's factual contentions. The court will therefore exclude from this opinion those factual contentions which con-

tain no support in the record. The court also excludes those factual contentions which are based on inadmissible hearsay. *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) ("Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment.").

worked at the Fairfax plant from February 12, 2001, when she was placed on the "battery cable install" job, until March 6, 2001, when she allegedly suffered a right shoulder injury.

Plaintiff returned to work in April 2001, at which time she was placed on the "spare tire job." Plaintiff was placed on the "transmission job" and "starter job" in April or May 2001. Plaintiff believes the spare tire job, the transmission job, the starter job and the battery cable install job were not within her medical restrictions. Plaintiff never filed any grievances over being placed in jobs that she could not perform.

Plaintiff stopped working in May 2001 due to a worker's compensation injury. Plaintiff returned to work in July 2001 and worked in an assembly position until the end of September 2001, when she had surgery on her shoulder. Plaintiff was on paid worker's compensation leave from September 2001 through April 2002.

In January 2002, plaintiff returned to the plant with medical restrictions from Dr. Lowry Jones limiting her to no overhead work. The plant medical director, a white male, and the ADAPT Representative, an African–American female, were unable to place plaintiff in an available position within her restrictions in January 2002, and she was certified for paid leave until February 2002. On or about February 20, 2002, plaintiff returned to the plant with medical restrictions from Dr. Jones stating: "I would like to send her back to therapy for functional capacity evaluation, defining her work restrictions. At this time she is on a 30–pound lifting restriction to the chest, 5 pounds overhead." Plaintiff did not file a grievance over her attempts to return to work in January and February 2002. Plaintiff never asked John Melton, the bargaining chairperson for UAW Local 31 since 1999, to file a grievance on her behalf with regard to her placement in the ADAPT program, the GM Medical Department's refusal to clear her to return to work, or any other issues regarding her race, age, sex or disability.

In February 2002, plaintiff participated in a two-day functional capacity evaluation ordered by Dr. Jones. On or about March 4, 2002, GM received the results of plaintiff's functional capacity evaluation, which recommended "return to full duty work with no restrictions related to the upper extremities." On April 2, 2002, the plant medical director and ADAPT representative placed plaintiff on the "sticker job," an available position within her new restrictions. The "sticker job" required plaintiff to place stickers in the hood, bumper and trunk of cars. Plaintiff was physically capable of performing this job but alleged it caused her pain. No doctor or medical professional told plaintiff that this job was outside of her medical restrictions. On April 22, 2002, plaintiff requested and received a pass to leave the plant from her supervisor. Plaintiff has not returned to work at GM since that time.

After leaving the Fairfax plant on April 22, 2002, plaintiff requested and received sick leave papers. Dr. Howard Houghton, plaintiff's psychiatrist, informed GM that plaintiff was suffering from depression and would need to be off of work until July 3, 2002. On June 11, 2002, plaintiff went to another psychiatrist, Dr. Fred Fayne, who submitted documentation to GM stating that plaintiff had "major depression, recurrent stress" and "prolonged grief reaction" and could not return to work until August 1, 2002. Dr. Fayne also opined that plaintiff's condition was not caused by the work at GM. On August 1, 2002, Dr. Fayne notified GM that plaintiff was not released to return to work for an additional ninety days. On October 25, 2002, Dr. Fayne extended the restriction, telling GM that plaintiff could not return to work for an-

other ninety days. GM referred plaintiff to Dr. Fernando Egea, another psychiatrist, for a second opinion. Dr. Egea concurred with Dr. Fayne that plaintiff was not mentally capable of returning to work at that time. Dr. Fayne and Dr. Egea continued to recommend that plaintiff remain off work until July 3, 2003, when Dr. Fayne informed GM that plaintiff was "100% totally disabled from work" and would never be capable of returning to GM.

Pursuant to the collective bargaining agreement between GM and UAW, when an employee transfers from one plant to another and has GM corporate seniority greater than January 7, 1985, the employee will be given a plant seniority at the new plant of January 7, 1985. This provision of the agreement, which became effective in 1984, was collectively bargained for and applies to all transferring employees regardless of age, race, sex or disability. UAW Local 31's collective bargaining agreement allows employees with higher plant seniority dates to "bump" employees with lower plant seniority dates off their jobs, even if the less senior employee has ADAPT restrictions. Employees with less plant seniority cannot bump another employee from a job.

If a UAW member employed by GM feels she has been discriminated against due to race, age, sex, disability or other protected status, the member may file a grievance under paragraph 6(a) of the national collective bargaining agreement. Each grievance written under paragraph 6(a) is assigned to the local union's Civil Rights Committee for investigation, and the committee is requested to prepare a report which is submitted to the local shop chairman. Plaintiff never filed a charge of discrimination with UAW Local 31's Civil Rights Committee.

The record reflects that plaintiff does not allege any manager or supervisor at GM discriminated against her. No one in the ADAPT program said anything racially derogatory to plaintiff. Plaintiff stipulated in the Pretrial Order to the fact that no official of UAW ever made any comments to plaintiff which she felt to be inappropriate because of any reference to race, sex, age or disability. Plaintiff cannot identify any similarly situated or less qualified Caucasian employees who were accommodated when plaintiff was not.

Plaintiff is aware of GM's written anti-discrimination policy. Plaintiff is also aware that GM has an "Awareline," which is a toll-free number that GM employees may use to lodge complaints.

UAW concedes that on or about November 8, 2002, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Kansas Human Rights Commission ("KHRC").

Plaintiff has not had any contact with GM management since April 22, 2002. Plaintiff applied for, and was awarded, a full medical retirement from GM in February 2004.

On or about March 15, 2001, OSHA notified GM that plaintiff had filed a complaint alleging she was required to work outside her restrictions. GM responded to OSHA's information request and OSHA notified plaintiff that her allegations had been resolved to its satisfaction. OSHA notified plaintiff that any alleged retaliation relating to her complaint should be filed as soon as possible with OSHA because they "normally accept only claims filed within 30 days of the alleged discriminatory action."

In conversations with her committeeman, Barry Nix, regarding jobs plaintiff claims violated her restrictions, Nix never made any comments that plaintiff felt were inappropriate because of their racial, sexu-

al, age-related or disability-related content. Plaintiff never attended any union meetings to raise concerns about being placed in jobs outside of her restrictions, nor did plaintiff make any kind of appeal to the International Executive Board of the International Union, UAW in Detroit. Plaintiff never filed any internal union charges against any individual representative of Local 31 under the UAW Constitution. Plaintiff never filed a written appeal or complaint with the UAW Convention Appeals Committee or the Public Review Board.

As a UAW member, plaintiff received and continues to receive SOLIDARITY Magazine and has received some UAW Local 31 newsletters. SOLIDARITY has published five articles advising members of rights to appeal under the UAW Constitution since plaintiff became a UAW member in September 1994.

Plaintiff lives alone in a split-level home and is capable of cooking, cleaning and taking care of herself on a daily basis. Plaintiff drives and maintains her own car. Plaintiff has no problem with her shoulder while she is not working, and she takes care of her own grooming. Plaintiff is not currently under any physical medical restriction. Plaintiff continues to take medication for depression and is capable of functioning and taking care of her daily affairs.

## II. Legal Standards

### A. Pro Se Litigants

■■■ The court is mindful that plaintiff in this action appears pro se. A pro se litigant's pleadings are to be construed liberally and are held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). However, this does not excuse plaintiff from the burden of coming forward with evidence to support her claims as required by the Federal

Rules of Civil Procedure and the local rules of this court. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 649 (10th Cir.1988). Even a pro se plaintiff must present some "specific factual support" for her allegations. *Id.*

■■ Moreover, the Tenth Circuit has stated:

We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall,* 935 F.2d at 1110. The court may not, however, assume the role of advocate for the pro se litigant. *See Van Deelen v. City of Eudora, Kan.,* 53 F.Supp.2d 1223, 1227 (D.Kan.1999). Furthermore, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of N.M.,* 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall,* 935 F.2d at 1110).

### B. Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Analysis

### A. Procedural Issues

### 1. Statutory Preclusion

Plaintiff's primary complaint of discrimination under Title VII, the ADA and the ADEA is that UAW discriminated against her when she was assigned a plant seniority date of January 7, 1985, subsequent to plaintiff's transfer from the Leeds GM plant in Kansas City, Missouri to the Fort Wayne, Indiana GM plant. Pursuant to the collective bargaining agreement between GM and UAW, when any employee transfers from one plant to another with a GM corporate seniority greater than January 7, 1985, the employee will be given a January 7, 1985 plant seniority at the new plant. As a result of her January 7, 1985 plant seniority date, plaintiff alleges that African–American females over the age of forty were discriminated against because employees with more seniority could "bump" them from certain jobs, thereby limiting the employees' ability to be placed on jobs within their disability restrictions and within their seniority.

UAW urges the court to grant its motion for summary judgment on the grounds that plaintiff's discrimination claims are precluded by 29 U.S.C. § 623(f) and 42 U.S.C. § 2000e–2(h),[2] which generally state that it is not unlawful for an employer to apply different standards of compensation or terms of employment provided that such compensation or terms are made pursuant to a bona fide seniority system and such differences are not the result of the employer's intention to dis-

---

**2.** The Tenth Circuit in *Hiatt v. Union Pacific Railroad Company* held that the language of 29 U.S.C. § 623(f) and 42 U.S.C. § 2000e– 2(h) are "essentially identical." 65 F.3d 838 (10th Cir.1995).

criminate on the basis of race, color, religion, sex, or national origin. Plaintiff failed to respond to this argument.

■ The Tenth Circuit has held that "challenges to the routine operation of a bona fide seniority system must rest upon a claim of disparate treatment." *Hiatt,* 65 F.3d at 842. Therefore, to overcome UAW's motion for summary judgment, plaintiff must set forth specific facts demonstrating that GM and UAW's seniority system resulted in disparate treatment, rather than a disparate impact, on the basis of race, gender, age, or disability.

The record indicates that plaintiff was assigned her seniority date pursuant to a bona fide seniority system. Plaintiff argued that the seniority system had a "disparate impact" on her, and also that it resulted in the "disparate treatment" of her. In support of this argument, plaintiff submitted the affidavits of three African-American females over the age of forty who also worked at the GM plant and were UAW members. All three affidavits assert that GM and UAW failed to accommodate the employees' disabilities, and two of the affidavits assert racial discrimination and a hostile work environment.

■ The court has considered plaintiff's arguments and her supporting evidence. Even doing so, however, the court finds that plaintiff has failed to present evidence in support of her contention that the seniority provisions of UAW's collective bargaining agreement with GM intentionally discriminated against plaintiff on the basis of race, gender or age through disparate treatment. Rather, plaintiff's arguments, as well as her supporting affidavits, contend that GM and UAW's seniority system had a disparate impact on plaintiff, and, possibly, other African-American females over the age of forty. Accordingly, because plaintiff has failed to show that GM and UAW's seniority system resulted in the disparate treatment of African-American females over the age of forty, plaintiff's discrimination claims are precluded by 29 U.S.C. § 623(f) and 42 U.S.C. § 2000e–2(h).

## 2. Exhaustion of Administrative Remedies

■ UAW next argues that plaintiff failed to exhaust her Title VII and ADA administrative remedies by failing to file a timely charge of discrimination with the EEOC or an appropriate state agency within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1) (governing Title VII); 42. U.S.C. § 12117(a) (applying 42 U.S.C. § 2000e–5(e)(1) to the ADA). The 180 day period is extended to 300 days if a charge is filed with a state or local agency with the authority to grant or seek relief. *Id.* This filing requirement acts as a statute of limitations period. Therefore, subsequent action in federal court is generally barred if the filing requirement is not met. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1310 (10th Cir.1999).

Plaintiff filed a charge of discrimination against UAW with the EEOC and the KHRC on November 8, 2002.[3] Because plaintiff filed a charge with the KHRC, a 300 day limitation applies. UAW contends that the last time plaintiff could claim that the UAW failed to act in its capacity as

---

**3.** Defendant failed to supply the court with a copy of plaintiff's EEOC charge. Plaintiff's opposition exhibit G is a document that plaintiff entitled "Plaintiff's EEOC charge." This document was signed by plaintiff and dated August 19, 2002, but it appears to be the EEOC questionnaire rather than the official charge document. Notably, however, UAW's summary judgment motion concedes that plaintiff filed her EEOC and KHRC charge on November 8, 2002, and plaintiff did not dispute this date. Therefore, the court will assume that plaintiff filed an EEOC and KHRC charge on November 8, 2002.

plaintiff's representative is the last time plaintiff claimed she was forced out of the GM Fairfax plant on disability due to not being accommodated, or May 2001. Indeed, plaintiff's response states: "Reasonable care was not given to plaintiff in returning her to work. [UAW] had acknowledged that [plaintiff] had a disability by not placing her from 1995 until 2001 ...." (Pl.'s Resp. at 13–14). Plaintiff failed to argue that she was not accommodated subsequent to 2001. May 2001 clearly falls well outside the 300 day limitations period.

Furthermore, in her amended complaint, plaintiff argues that UAW's alleged acts of discrimination occurred when plaintiff was assigned a plant seniority date of January 7, 1985, subsequent to transferring from the GM Leeds plant in Kansas City, Missouri to the Fort Wayne, Indiana GM plant. The record reflects that plaintiff was assigned her January 7, 1985 seniority date some time in 1991,[4] well beyond the 300 day limitations period.

 Plaintiff also alleges that UAW discriminated against her when it applied her new January 7, 1985 plant seniority date to its "bumping" policy, which allows employees with more seniority to bump less senior employees off their jobs. Significantly, however, plaintiff does not contend that she was ever bumped directly as a result of UAW's attempt to intentionally discriminate against her.[5] Plaintiff also argues that she was unaware of the effects that the seniority date assignment system would have on her because she was unaware of UAW Local 31's Local Bargaining Agreement that allowed bumping of employees with less seniority. However, even if plaintiff could show that she was not aware of the allegedly discriminatory effect of the seniority system until as late as 2001 or 2002, plaintiff's arguments still fail because she has not shown that she was bumped from any job during the 300 days prior to filing her EEOC and KHRC charge.

Specifically, the facts show that plaintiff did not work at GM from September 2001 until April 2, 2002. Plaintiff's only contact with GM managers or supervisors during this period occurred in January and February 2002, after which plaintiff was not returned to work but was instead sent home on paid leave. Plaintiff returned to work on April 2, 2002, but has been excused from work since April 22, 2002, by her psychiatrist. Plaintiff did not return to work at GM after April 22, 2002. There is no evidence, nor has plaintiff alleged, that she was bumped at any time from September 2001 to the present, let alone from January 6, 2002 to the present.

4. Plaintiff did not discuss when her plant seniority date came into effect in her response to UAW's summary judgment motion. However, plaintiff's opposition to GM's motion for summary judgment states: "When [plaintiff] transferred to the Fort Wayne Truck & Bus in 1991 she was subjected to provisions that did not affect her at Leeds, and she knew nothing of those provision [sic] until her transfer.. [sic] The January 7, 1985 seniority date that she was given, [sic] was not a factor in job placement with regards to her disability because that plant has no Local Agreement that allows for any employee to bump another employee except for shift preference." (Pl.'s Resp. at 11).

5. For instance, plaintiff stated in her opposition that "Plaintiff has asserted that the disparate impact on her and others of having a seniority date of 1/7/85 has violated the ADEA when it comes to job placement of higher seniority black females with disabilities.... This discrimination and disparate treatment of African American females over the age of 40 is apparent and is violation [sic] of the ADA as well." (Pl.'s Resp. at 12). Plaintiff did not, however, allege that she was ever bumped as a result of UAW's attempt to intentionally discriminate against her.

Accordingly, for the reasons stated above, plaintiff has failed to timely exhaust her administrative remedies with respect to her discrimination claims. Because plaintiff's discrimination claims are precluded by 29 U.S.C. § 623(f) and 42 U.S.C. § 2000e–2(h), and plaintiff has failed to timely exhaust her administrative remedies on the discrimination claims, the court hereby grants UAW's summary judgment motion with respect to plaintiff's ADA, ADEA and Title VII gender and race discrimination claims.

## B. Remaining Claims

Following dismissal of the aforementioned claims, plaintiff has the following remaining claims: (1) hostile work environment; (2) duty of fair representation violations; (3) failure to represent; (4) OSHA violations; and (5) declaratory and injunctive relief.

The court has granted summary judgment on plaintiff's Title VII claims with respect to her gender and race discrimination claims. However, the court did not include plaintiff's Title VII hostile work environment or failure to represent claims in this dismissal. Plaintiff's EEOC and KHRC charge was not included as part of the record.[6] However, UAW concedes that plaintiff did file a charge with the EEOC and KHRC. Unfortunately, without the actual charge documentation, the court is unable to ascertain what allegations plaintiff included in her charge.

In her amended complaint, plaintiff alleged an ongoing pattern of hostile work environment and UAW's failure to represent her. Although plaintiff has not been employed with GM since April 22, 2002, plaintiff did, in fact, belong to UAW during the period of time in which plaintiff was required to exhaust her administrative remedies. Therefore, viewing the facts in the light most favorable to the plaintiff, the court assumes that plaintiff exhausted her administrative remedies with regard to her hostile work environment and failure to represent claims, and will thus continue in its analysis of these claims.

### 1. Hostile Work Environment [7]

In support of its summary judgment motion, UAW argues that plaintiff's hostile work environment claim fails because plaintiff provided no evidence that UAW representatives engaged in any harassment of plaintiff. Plaintiff alleges that her amended complaint "show[s] a pattern of adverse discrimination by General Motors and defendant has done nothing to eliminate said discriminatory policies, practices, and procedures through Fair Representation of plaintiff." (Pl.'s Am. Compl. at 3). Importantly, plaintiff's response to defendant's summary judgment motion does not directly address her hostile work environment claim.

■ To survive summary judgment on a hostile work environment claim, plaintiff must set forth evidence that one or more UAW representatives subjected plaintiff to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or perva-

6. *See* supra note 3.

7. Plaintiff entitled this claim "Unequal Terms and Conditions of Employment Racially Hostile Work Environment." Plaintiff also brought claims of violations of Title VII, which the court interpreted as allegations of race and gender discrimination, as well as violations of the ADA and ADEA. The court finds that the "unequal terms and conditions of employment" portion of this claim is encompassed in plaintiff's other discrimination claims, and will therefore analyze this claim as a hostile work environment claim under Title VII. Additionally, because plaintiff did make any hostile work environment allegations that alleged racial discrimination specifically, the court will construe this claim as a general hostile work environment claim rather than limit it racial hostility.

sive to alter the conditions of [plaintiff's] employment and create an abusive working environment." *Henderson v. Int'l Union,* 263 F.Supp.2d 1245, 1292 (D.Kan. 2003) (quoting *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1097 (10th Cir. 1999)). Furthermore, "plaintiff must show 'more than a few isolated incidents of racial enmity'" or "sporadic racial slurs"; plaintiff must instead demonstrate "a steady barrage" of offensive comments. *Bolden v. PRC Inc.,* 43 F.3d 545, 551 (10th Cir.1994) (quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412 (10th Cir.1987) (quoting *Snell v. Suffolk Co.,* 782 F.2d 1094, 1103 (2d Cir.1986))).

Here, there is nothing in the record to support an inference that any union officials subjected plaintiff to harassment. To the contrary, plaintiff stipulated in the Pretrial Order to the fact that no official of UAW ever made any comments to plaintiff which she felt to be inappropriate because of any reference to race, sex, age or disability. Therefore, because plaintiff failed to make a requisite showing that UAW created a hostile work environment, the court grants UAW's summary judgment motion on this claim.

### 2. Breach of Duty of Fair Representation and Failure to Represent

Plaintiff also brought two separate claims against UAW for breach of UAW's duty of fair representation and failure to represent. In her amended complaint, plaintiff did not provide any specific arguments or evidentiary basis for either of these claims. Therefore, in light of the fact that a duty of fair representation and the failure to represent are both requirements of the same claim,[8] the court will

consolidate them and treat them as a single claim.

In her response to UAW's summary judgment motion, plaintiff alleged that "[t]he union does nothing to protect the employee from further injury, but colludes with GM to place the employee on what GM wants the employee to do rather than protect and enforce the ADAPT program for the employee who has obvious restrictions that were not met." (Pl.'s Resp. at 11). Additionally, plaintiff asserted:

> Defendant [UAW] has breached its Duty to Represent the interests of all its members fairly and impartially. By [sic] allowing GM to place its members on sick leave, instead of accommodation while new employees are hired, and by not allowing all union members the same protections of ADAPT is inexcusable neglect.

(Pl.'s Resp. at 14).

 A union's deliberate refusal to file grievable discrimination claims violates Title VII. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 667–69, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). Under Title VII, to establish a prima facie case against a union for failing to file a grievance, plaintiff must demonstrate that (1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) there was some indication that the union's actions were motivated by discriminatory animus. *York v. Am. Tel. & Tel. Co.,* 95 F.3d 948, 955–56 (10th Cir.1996). Because the court believes it to be dispositive of plaintiff's claims, the court turns to

---

8. *See Foust v. Int'l Bhd. of Elec. Workers,* 572 F.2d 710, 714 (10th Cir.1978) ("The issues for the jury to determine were, first, whether the defendant Union was obliged to represent the plaintiff at grievance procedures with the Un-

ion Pacific; second, whether failure to represent breached a duty owed the plaintiff to represent him fairly in grievance procedures . . . .").

the issue of whether UAW permitted a discriminatory violation to go unrepaired, thereby breaching its duty of fair representation. A union is not required to file or pursue meritless grievances. As the Tenth Circuit stated in *York:*

> [A union] is not compelled ... under Title VII, to pursue an individual member's grievance if the union reasonably disagrees with the basis for that grievance. A union's statutory duty of fair representation does not oblige it to take action on every grievance brought by every member. Indeed, if a union could be compelled to take official action on every grievance, irrespective of merit, the union would quickly deplete its resources and credibility; and the arbitration machinery would eventually become overburdened.

*Id.* at 956 (citing *Vaca v. Sipes,* 386 U.S. 171, 191–92, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).

■ UAW also argues that mere inaction does not constitute acquiescence of an employer's discrimination. The Tenth Circuit has held that "[a] union cannot acquiesce in a company's prohibited employment discrimination and expect to evade Title VII liability for such discrimination." *Romero v. Union Pac. R.R.,* 615 F.2d 1303, 1311 (10th Cir.1980). However, mere inaction does not constitute acquiescence. Acquiescence requires (1) knowledge that prohibited discrimination may have occurred and (2) a decision not to assert the discrimination claim. *See Goodman,* 482 U.S. at 669, 107 S.Ct. 2617. In *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499 (D.Kan.1993), *aff'd,* 51 F.3d 285, 1995 WL 133385 (10th Cir.1995), this court further defined the contours of liability based upon this theory. In discussing the Tenth Circuit's previous decision in *Romero,* the court in *Anspach* stated:

> This court is not of the view, however, that the *Romero* court intended that a

labor organization be held vicariously liable any time an employer commits prohibited discrimination. In *Romero,* there was evidence that the union and the employer were "in the matter together" in delaying Romero's reinstatement because of his natural origin and in retaliation for his having filed a complaint with the EEOC. The court of appeals noted that the union had considerable input on reinstatement, and that the employer and the union had numerous conferences about Romero's situation. There was also evidence that the union threatened Romero that if he refused to dismiss his complaint, the union would wash its hands of him and would not pursue his reinstatement vigorously; moreover, there was evidence that union representatives asked whether they could punish Romero for complaining to the EEOC.

*Id.* at 1517. The court in *Romero* ultimately held that issues of fact existed "with respect to the union's involvement in the alleged discrimination." 615 F.2d at 1311.

■ Here, it is undisputed that no official of UAW ever made any comments to plaintiff which she felt to be inappropriate because of any reference to race, sex, age or disability. In addition, plaintiff has not presented any evidence to support the contention that any actions taken by UAW were based on a discriminatory motive against plaintiff or a member of a protected class. More importantly, however, plaintiff never attempted to file any grievance with regard to her job placements within the Fairfax plant, nor did plaintiff attempt to file an internal union charge against any official with either UAW Local 31 or the international UAW alleging that a UAW representative was treating her or her job placement improperly.

Because plaintiff neither provided the court with evidence indicating that UAW failed in its duty to represent her, nor opposed UAW's aforementioned arguments, the court finds that plaintiff has failed in her burden to set forth specific facts showing that there is a genuine issue for trial. Therefore, the court grants defendant's motion for summary judgment on these claims.

### 3. OSHA

Plaintiff also brought suit against UAW under OSHA, 29 U.S.C. § 651 *et seq.* UAW argues that OSHA does not permit a private cause of action.

 OSHA does not create a private cause of action on behalf of injured workers. *See* 29 U.S.C. § 653(b)(4) ("Nothing in this Act shall be construed ... to enlarge or diminish or affect in any other manner the common-law or statutory rights, duties, or liabilities of employers and employees ...."); *see also Ellis v. Chase Communications, Inc.,* 63 F.3d 473, 478 (6th Cir.1995); *Mason v. Ashland Exploration, Inc.,* 965 F.2d 1421, 1425 (7th Cir.1992). Indeed, OSHA standards may not be introduced as evidence for any reason relating to civil liability. *McHargue v. Stokes Div. of Pennwalt Corp.,* 912 F.2d 394, 396 (10th Cir.1990). Thus, plaintiff is barred from bringing suit under OSHA. Accordingly, the court grants UAW's motion for summary judgment on this claim.

### 4. Violation of Company Policy and Collective Bargaining Agreements

Plaintiff also brought two separate claims alleging UAW violated its company policy and collective bargaining agreements by discriminating against her and other black female employees. UAW argues this claim is barred by the six-month statute of limitations imposed under the § 301 "hybrid" method under *DelCostello*

*v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Section 301 of the Labor Management Relations Act ("LMRA") makes collective bargaining agreements enforceable in federal court. *See* 29 U.S.C. § 185. However, the statute does not set forth a statute of limitations. In *DelCostello,* the United States Supreme Court determined that "federal labor policies and the practicalities of § 301 litigation supported the application of the six-month statute of limitations prescribed by § 10(b) of the LMRA, 29 U.S.C. § 160(b), to 'hybrid' § 301/unfair representation suits charging an employer breached a collective-bargaining agreement and the union breached its duty of fair representation." *Edwards v. Int'l Union, United Plant Guard Workers,* 46 F.3d 1047, 1050 (10th Cir.1995) (citing *DelCostello,* 462 U.S. at 154–55, 103 S.Ct. 2281). On several occasions, the Tenth Circuit has followed *DelCostello* and applied a six-month statute of limitations to "hybrid" suits. *See Edwards,* 46 F.3d at 1052; *Aguinaga v. United Food & Commercial Workers Int'l Union,* 993 F.2d 1463, 1472 (10th Cir.1993); *Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419, 420 (10th Cir. 1990); *Rucker v. St. Louis S.W. Ry. Co.,* 917 F.2d 1233, 1237–38 (10th Cir.1990).

 A "hybrid" suit, as defined in *DelCostello,* is so named because it "combines two conceptually independent causes of action, the first against the company for breach of the contract (a standard § 301 claim) and the second against the union for breach of the duty of fair representation (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee)." *Webb v. ABF Freight Sys., Inc.,* 155 F.3d 1230, 1238 (10th Cir.1998). In addition, "[t]o prevail against his former employer under this hybrid § 301/DFR [duty of fair representation] cause of action, a discharged worker must prove three ele-

ments: (1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) A violation of the collective bargaining agreement by the company". *Id.* at 1239. The fact that plaintiff brought suit against GM and UAW in separate suits is irrelevant, as a plaintiff "need not sue both his union and former employer in the same case, and he may choose to seek damages against only one of the potential defendants, but in any event, 'the case he must prove is the same whether he sues one, the other, or both.'" *Id.* (quoting *DelCostello*, 462 U.S. at 165, 103 S.Ct. 2281).

■ Plaintiff argues that a four-year statute of limitations applies to these claims pursuant to *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), in which the Supreme Court applied a four-year statute of limitations for hostile work environment, wrongful termination and failure-to-transfer claims brought under 42 U.S.C. § 1981. However, plaintiff has not brought claims under 42 U.S.C. § 1981. Instead, plaintiff has alleged violation of company policy and collective bargaining agreements against GM, a standard claim under § 301 of the LMRA, as well as for unfair representation against UAW, that fit squarely within the "hybrid" exception set out in *DelCostello*. Therefore, a six-month statute of limitation applies. *DelCostello*, 462 U.S. at 169, 103 S.Ct. 2281.

■ The six-month statute of limitations begins running "when the employee 'knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the union's alleged violations.'" *Edwards*, 46 F.3d at 1053 (quoting *Lucas*, 909 F.2d at 420–21). Here, plaintiff ceased working at GM on April 22, 2002, and filed the instant suit on June 18, 2003, or well over a year after any of plaintiff's allegations could have occurred. Therefore, these claims are barred by the statute of limitations, and UAW's motion for summary judgment is granted on these claims.

**5. Declaratory and Injunctive Relief**

Plaintiff also has requested declaratory and injunctive relief. Plaintiff seeks an injunction and declaratory judgment to require UAW to "cease and desist from the illegal violations set forth in this complaint that have effected [sic] Plaintiffs [sic] pay, benefits, and emotional health." (Pl.'s Am. Compl. at 6). Defendant did not respond to this claim. The court first notes that plaintiff no longer works at GM. In addition, the instant suit is not a class action suit. Accordingly, plaintiff does not have any interest in this remedy, making the argument moot.

Moreover, this claim is actually a remedy for plaintiff's other claims rather than an independent claim. In light of the fact that the court has already dismissed all of plaintiff's remaining claims, the court finds that plaintiff's request for remedies with regard to those dismissed claims is moot.

**6. Arbitration**

In response to each of plaintiff's claims, UAW also argued that the national collective bargaining agreement between UAW and GM requires arbitration to be plaintiff's exclusive remedy against UAW. Because the court has already granted summary judgment on each of plaintiff's claims, the court declines to consider this argument.

**IT IS THEREFORE ORDERED** that UAW's Motion for Summary Judgment (Doc. 22) is granted.